UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| KENNETH PITTS, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Civil Action No. 1:22-CV-11062-AK |
| SAN JUAN COLLEGE, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM AND ORDER ON**
**DEFENDANT SAN JUAN COLLEGE'S MOTION TO DISMISS OR TRANSFER**

**A. KELLEY, D.J.**

Kenneth Pitts brings this action against San Juan College ("the College"), a New Mexico-based college which offers a hybrid physical therapist assistant program with online and in-person learning components, alleging "racial discrimination in accommodating requests for degree completion by way of choice of clinical rotation sites" in violation of federal civil rights statutes. [Dkt. 1-1]. The College filed a motion to dismiss for want of personal jurisdiction, or to transfer, pursuant to Federal Rule of Civil Procedure 12(b)(2). [Dkt. 6]. For the following reasons, the College's motion [Dkt. 6] is **GRANTED**, and this action will be transferred to the District of New Mexico, Albuquerque Division.

**I.      BACKGROUND**

San Juan College is an accredited community college in Farmington, New Mexico that is incorporated under the laws of New Mexico. [Dkt. 7-1 at 2]. The College does not maintain facilities, buildings, or any other addresses outside of New Mexico. [Id.]. The College enrolls approximately 15,000 students annually and offers a variety of degrees and certificates, including

1

a Physical Therapist Assistant (PTA) Program.  [Dkt. 1-11 at 5].  Students who successfully graduate from the PTA program are eligible to take a national licensing exam.  [Id.].  The PTA program has a hybrid learning option with online and in-person components.  [Dkt. 1-2 at 1]; [Dkt. 7-1 at 2].  Students are required to go to the Farmington campus at the end of the semester for nine to sixteen days to complete the in-person components of the program.  [Dkt. 7-1 at 2]; [Dkt. 12-2 at 6].  Students are also required to complete three full-time externships with third-party providers where they practice physical therapist assistant skills under the supervision of a clinical instructor.  [Dt. 1-11 at 6].  One of these rotations must be in an in-patient setting.  [Dkt. 1-5 at 3].  Students may not complete their rotations with a current or former employer.  [Dkt. 1 at 4].

From fall 2018 to summer 2020, plaintiff Kenneth Pitts, a Black man, was a student in the College's PTA program.  [Dkt. 1 at 4].  While enrolled, Pitts learned that the program previously allowed  two to three "non-minority students" to complete their rotations at out-patient sites.  [Dkt. 1-2 at 1; Dkt. 1-5 at 2].  Pitts sought to do clinical rotations (1) with a sports team or team-affiliated physical therapist; (2) with Alliance Physical Therapy, Pitts' former employer; or (3) with Massachusetts General Hospital, whose physical therapy unit is affiliated with the Boston Bruins, another of Pitts' former employers.  [Dkt. 1-2 at 1.].  Pitts contacted Dr. Therese Millis, the program director, seeking "to do the very same thing that [the other students] were being permitted to do" and asked Dr. Millis to "go back to work for this employer and perform my rotations at different locations within the company."  [Dkt. 1-5 at 3].  Dr. Millis denied the request, citing the program policy that requires students to do one-in patient rotation and two-out patient rotations and prohibits students from completing rotations with a previous or current employer, even at a different location within the company.  [Id. at 1-3].  Dr. Millis

reiterated this policy when speaking to the entire class during the class's first visit to the New Mexico campus. [Id. at 3]. Pitts alleges the College, through its agents, engaged in racial discrimination by exempting "non-minority students" from the rule while enforcing the rule against Pitts. [Dkt. 1 at 4]; [Dkt. 1-2 at 1]. Further, Pitts alleges that the College retaliated against him after he raised complaints by restricting his ability to complete the PTA program. [Dkt. 1 at 4].

On July 1, 2022, Pitts filed the complaint at issue in the District of Massachusetts under diversity jurisdiction. [Dkt. 1]. He alleges to have suffered loss of employment damages of an estimated $100,000 to 125,000 per year since 2019. [Id. at 4]. The College moved to dismiss the complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). [Dkt. 6].

## II.   LEGAL STANDARD

The plaintiff bears the burden of proving that the Court may exercise personal jurisdiction over the defendant. Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002). When the Court assesses its jurisdiction without an evidentiary hearing, the prima facie standard applies. Id. at 51. Under the prima facie standard, the court should "consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992). The Court is to consider "the facts from the pleadings and whatever supplemental filings (such as affidavits) are contained in the record." Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016). "[T]he plaintiff must put forward 'evidence of specific facts' to demonstrate that jurisdiction exits." A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 57 (1st Cir. 2016). A plaintiff's "unsupported allegations in its

pleadings" are not sufficient. Id. The Court "'must accept the plaintiff's (properly documented) evidentiary proffers as true'…irrespective of whether the defendant disputes them" for the purposes of the motion. Adelson v. Hananel, 510 F.3d 43, 48 (1st Cir. 2007) (quoting Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995)). The Court is to view these facts in the light most favorable to the plaintiff's jurisdictional claim. Mass. Sch. of Law v. ABA, 142 F.3d 26, 34 (1st Cir. 1998).

The defendant may also offer evidence, but the evidentiary proffers of the defendant only "become part of the mix…to the extent that they are uncontradicted." Adelson, 510 F.3d at 48 (citing Mass. Sch. of Law, 142 F.3d at 34); see Baskin-Robbins, 825 F.3d at 34 ("We may, of course, take into account undisputed facts put forth by the defendant.").

**III.   DISCUSSION**

For a court to exercise personal jurisdiction over a defendant, it must find "sufficient contacts between the defendant and the forum to satisfy both that state's long-arm statute and the Fourteenth Amendment's Due Process clause." Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995). Courts have interpreted the Massachusetts long-arm statute to go beyond the limits of the Constitution, Gray v. O'Brien, 777 F.2d 864, 866 (1st Cir. 1985), therefore, the focus of this inquiry is whether the exercise of personal jurisdiction over the defendant would be consistent with federal due process requirements.

Due process requires that a defendant have "minimum contacts" in the forum "such that maintenance of the suit does not offend the traditional notions of fair play and substantial justice. Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). The Supreme Court has recognized two theories upon which a defendant may be subjected to a court's personal jurisdiction: general jurisdiction and specific jurisdiction. A defendant who is subject to a court's general jurisdiction

4

can be haled in to defend "causes of action arising from dealings entirely distinct from" its in-state contacts. Id. at 318. In other words, a court may exercise personal jurisdiction over a defendant that is under its general jurisdiction regardless of whether the facts giving rise to the cause of action relate to the forum. The more limited theory of specific jurisdiction "allows a court to hear a particular case as long as 'that case relates sufficiently to, or arises from, a significant subset of contacts between the defendant and the forum." Baskin-Robbins, 825 F.3d at 35 (quoting Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999)). The Court will assess each theory of jurisdiction as it applies to the College in turn.

### 1. General Jurisdiction

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (quoting Int'l Shoe Co., 326 U.S. at 317 (1945)). To be "at home" in the forum state, "its continuous and substantial contacts with a forum State must be akin to those of a local enterprise that actually is 'at home' in the State" or "comparable to a domestic enterprise in that State." Daimler AG v. Bauman, 571 U.S. 117, 133 n.11, 152 (2014). A court may only exercise general jurisdiction over an out-of-state corporation "exceptional case[s]." Id. at 139 n.19.

Here, the College is not under the Court's general jurisdiction. San Juan College is incorporated under the laws of New Mexico. [Dkt. 7-1 at 2]. The College does not maintain facilities, buildings, or any other addresses in Massachusetts—or indeed, in any state other than New Mexico. [Dkt. 7-2]. The College does not pay taxes in Massachusetts and has never had a physical presence or phone number in Massachusetts. [Dkt. 7-1 at 3]. It further has never paid

an entity in Massachusetts for clinical placements or internships for its PTA program. [Id.]. From fall 2018 to summer 2020, Pitts was the only student enrolled in the PTA program in who resided in Massachusetts, and no currently-enrolled student of the PTA program resides in Massachusetts.[1] [Id.]. To the extent that the College took any actions promoting itself in Massachusetts, those actions were notably minimal and at least as directed as the United States as a whole as they were at Massachusetts.[2]

Further, the College's contacts with Massachusetts entities have been limited. For example, Pitts alleges that the College had affiliation agreements with the externship clinics in Massachusetts, [Dkt. 1-7 at 3], and arranged externships with Boston Sports Medicine and Worcester Physical Therapy. [Dkt. 1-7 at 2]. The contacts are not nearly so extensive that the College would be "essentially at home" and "comparable to a domestic enterprise" in Massachusetts. Daimler AG, 571 U.S. at 133 n.11, 152. Further, the College has enrolled at

---

[1] Pitts claims in his opposition that "the College's PTA Program enrolled and graduated a Massachusetts [resident] a few years prior to [Pitts'] enrollment in the program." [Dkt. 12 at 4]. However, this information is not contained in the complaint or in any of the supplemental material Pitts provides and thus cannot be considered. See Baskin-Robbins Franchising LLC, 825 F.3d at 34 ("For the purposes of examining the merits of a jurisdictional proffer, [a court considers] the facts from the pleadings and whatever supplemental filings (such as affidavits) are contained in the record.").

[2] The College submits the affidavit of Adrienne Forgette, the Vice President for Learning at San Juan College in which she asserts the College "has never and does not now actively advertise its program in Massachusetts" and "has never and does not now actively solicit business in Massachusetts." [Dkt 7-1 at 3]. In his opposition, Pitts disputes this claim, stating that Dr. Millis traveled to Massachusetts to promote the program, that this promotion allowed the program to gain attention and grow, and that this promotion in Massachusetts led another student to enroll in the program prior to Pitts. [Dkt. 12-1 at 1]. To support this, Pitts cites an exhibit attached to his opposition. [Dkt 12-2]. However, the document Pitts offers only states that "When [the Program] first got started, we went to conferences to discuss our model" without any specific reference to Massachusetts. [Id. at 5]. Because the Court is obligated to view the evidence in the light most favorable to Pitts, Mass. Sch. of Law, 142 F.3d at 34, it can be reasonably inferred from the evidence proffered by Pitts that individuals affiliated with the College traveled to conferences to promote the program. However, that is all this Court can consider. The assertions by Pitts that the College was able to promote its program in Massachusetts and successfully recruited another student through this promotion are not stated in the complaint and the exhibit Pitts offers in support does not seem to suggest the promotion of the program was directed to Massachusetts any more than to any other state. Because "it is not enough for the plaintiff to rely on unsupported allegations" and Pitts failed to put forward evidence that supports his allegation that representatives for the College attended conferences in Massachusetts that successfully lead to students being recruited to the program, the Court will consider the affidavit to the extent it is not contradicted by the evidentiary submission of Pitts. A Corp., 812 F.3d at 57. All the Court can consider is that the College's promotion in Massachusetts, while not nonexistent for the purposes of this motion, were minimal and not specifically directed towards Massachusetts.

least one online student who resided in Massachusetts (Pitts), but this alone is hardly sufficient to support a finding that the College was at home in the state: while "a corporation's *pervasive* virtual presence in a forum may be the linchpin for a finding that its business contacts are so continuous and systematic as to render it at home in the forum…the mere whiff of a virtual presence will not suffice" to rise to the level of general jurisdiction. Chen, 956 F.3d at 57-58 (emphasis added) (finding Alabama college that offered an interactive online learning option accessible in Massachusetts and that had two Massachusetts-based students was not enough to make the college "essentially at home" in Massachusetts); see Carter v. Univ. of Tex., 2021 U.S. App. LEXIS 1584, at *8 (6th Cir. 2021) (Plaintiff's "emails and telephone calls [with the defendant] seeking verification that [the plaintiff] completed the…internship [were] insufficient to establish that the defendants had the minimum contacts with [the forum] to satisfy personal jurisdiction.").

### 2. Specific Jurisdiction

In order for a court to exercise specific jurisdiction over a defendant: (1) the claim must "relate[] to or arise[] out of defendant's contacts with the forum"; (2) the contacts must "constitute purposeful availment of the benefits and protections afforded by the forum's law"; and (3) the exercise of jurisdiction must be reasonable. Phillips Exeter Acad.. 196 F.3d at 288. "Failure to make any one of these showings dooms any effort to establish specific jurisdiction." Scottsdale Capital Advisors Corp. v. Deal, LLC, 887 F.3d 17, 20 (1st Cir. 2018). Where, as here, the basis for specific jurisdiction is virtual contact "operated from outside the forum state that residents in that state can access, the focus of this analysis has typically been on the purposeful availment requirement." Kuan Cheng v. United States Sports Acad., Inc., 2019 U.S. Dist. LEXIS 41156, at *13-14 (D. Mass. Mar. 14, 2019).

The College's contacts with Massachusetts do not constitute purposeful availment of the benefits and protections of Massachusetts law, and thus the Court cannot exercise specific jurisdiction over the College. A defendant purposefully avails itself of a forum's laws when it has "deliberately target[ed] its behavior" toward the forum. Carreras v. PMG Collins, LLC, 660 F.3d 549, 555 (1st Cir. 2011) (citing J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 879 (2011)). This requirement protects defendants from being "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (internal quotations and citations omitted). A finding of purposeful availment "requires more than the unilateral activities of third parties." Chen, 956 F.3d at 59.

The First Circuit has identified voluntariness and foreseeability as "the two cornerstones of purposeful availment." Ticketmaster-New York v. Alioto, 26 F.3d 201, 207–08 (1st Cir. 1994). Voluntariness requires that the defendant's contact with the forum state resulted proximately from their own actions, rather than those of other parties. Chen, 956 F.3d at 59. Foreseeability requires that the defendant's conduct and connection with the forum state must be "such that [they] should reasonably anticipate being hauled into court there." Id. (quoting Burger King, 471 U.S. at 474).

True, the College knew Pitts was residing in Massachusetts. But mere knowledge that a contact resides in a forum state is not sufficient to establish purposeful availment of that forum's laws. Id. at 60 ("[the defendant] perhaps could have anticipated that Massachusetts residents (like residents of any other state) might enroll in its Distance Learning Program and access its online learning platform from the Commonwealth. But this broad and generic degree of foreseeability is insufficient…to rise to the level of purposeful availment"). "The defendant's

awareness of the location of the plaintiff is not, on its own, enough to create personal jurisdiction over a defendant." Phillips v. Prairie Eye Ctr., 530 F.3d 22, 28 (1st Cir. 2008) (finding that knowing a plaintiff resided in the forum, mailing a contract there, and following up on the receipt of the contract via e-mail was insufficient to find purposeful jurisdiction).

Further, courts in this circuit have routinely held that a college's offer of remote learning programs to Massachusetts residents is not sufficient to establish purposeful availment of Massachusetts law. Rather, a plaintiff must establish that the college "deliberately used its online learning program…to target him while he was in Massachusetts." Chen, 956 F.3d at 61; see Chase v. Gist, 2012 U.S. Dist. LEXIS 62087, at *16–18 (D. Mass. May 3, 2012) (declining to exercise specific jurisdiction over an online learning program that advertised it could be accessed "anywhere in the world" and had enrolled only one Massachusetts resident, because the program was "not directed at Massachusetts any more than it is at the world at large"); Mateo v. Univ. Sys., 2019 U.S. Dist. LEXIS 6810, at *13–14 (D. Mass. Jan. 14, 2019) (holding that incidental interstate contacts that "are typical of prominent universities," are not alone sufficient to satisfy the purposeful availment prong).

Here, Pitts has not alleged that the College's business practices targeted Massachusetts residents any more than residents of the United States at large. Rather, the emails Pitts attached to his complaint indicate that, while the College knew Pitts was in Massachusetts, the College actively encouraged him to move closer to the school. [Dkt. 22 at 3 ("it will be difficult for you to secure rotation sites in Massachusetts because the sites…are loyal to local PT & PTA schools and programs. You should consider moving here [New Mexico] to complete the program.")]. This suggests that, rather than availing itself of the benefits and protections of Massachusetts law, the College made attempts to avoid conducting business operations in Massachusetts.

Pitts does allege that the College had some contact with Massachusetts-based entities to arrange placement for externships. [Dkt. 1-11 at 8 ("All externships may be completed near a student's place of residence if a legal clinical contract can be established between the physical therapy facility and San Juan College.")]. However, as Pitts acknowledges, New Mexico law prohibits the College from indemnifying third parties who provide externships from claims resulting from the placement of students with the externship. [Id. at 6]. This strongly suggests that the dealings the College had with out-of-state entities regarding externships were conducted at arm's length, and were not the purposeful contacts necessary to put the College on notice that it could be haled into court in Massachusetts.

Because the record does not establish that the College purposefully availed itself of Massachusetts law, the Court cannot exercise specific jurisdiction. Baskin-Robbins Franchising LLC, 825 F.3d at 39. Because the Court cannot assert either general or specific jurisdiction over the defendant San Juan College, the motion to dismiss for lack of personal jurisdiction must be granted.

### 3. Transfer

Where the Court cannot exercise personal jurisdiction, federal law permits it to transfer a case "if it is in the interest of justice … to any other such court in which the action ... could have been brought at the time it was filed or noticed." 28 U.S.C. § 1631; see Federal Home Loan Bk. of Bos. v. Moody's Corp., 821 F.3d 102, 109 (1st Cir. 2016) (holding that Section 1631 authorizes transfer where transferring court lacks personal jurisdiction), abrogated on other grounds, Lightfoot v. Cendant Mortg. Corp., 580 U.S. 82 (2017). Here, the Court's only available options are to dismiss this action, or to transfer it to the United States District Court for the District of New Mexico, which may exercise general jurisdiction over the College. Because

the interests of justice would not be served by dismissing this action, the Court will transfer it to the District of New Mexico, where it may be adjudicated on the merits, if plaintiff wishes to continue to pursue his claims.

## IV.     CONCLUSION

For the foregoing reasons, defendant San Juan College's motion to transfer [Dkt. 6] is **GRANTED**.  This matter will be transferred to the District of New Mexico, Albuquerque Division.

**SO ORDERED.**

Dated: February 9, 2023                                                  /s/ Angel Kelley
                                                                                     Hon. Angel Kelley
                                                                                     United States District Judge