## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**KENNETH PITTS,**

**Plaintiff,**

**v.**                                                    **1:23-cv-00120-WJ-SCY**

**SAN JUAN COLLEGE,**

**Defendant**

### MOTION FOR SUMMARY JUDGMENT "ON THE MERITS" IN FAVOR OF THE PLAINTIFF FOR THE DEFENDANT'S VIOLATIONS

Plaintiff, Kenneth Pitts (pro se), respectfully moves, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment on the grounds that there are no genuine issues of material fact and Plaintiff therefore is entitled to judgment as a matter of law. With this motion, the Plaintiff seeks judgment based "on the merits" (pleadings, admissions, affidavits, etc.) of the claim, rather than the procedural issues. With this submission, the Plaintiff does respectfully request Summary Judgment in favor of the Plaintiff for Defendant's violations (1) under 42 U.S.C. 2000a-1 and 2000a-2; and (2) 42 U.S.C. § 2000d; and (3) Title VI; and (4) The New Mexico Human Rights Act. In support thereof, the Plaintiff states as follows:

### PROCEDURAL BACKGROUND

Plaintiff Kenneth Pitts (pro se) originally filed his Complaint for a Civil Case in the United States District Court for the District of Massachusetts on July 1, 2022. [See Case 1:22-cv-11062-AK, Doc. 1] Defendant San Juan filed its Motion to Dismiss and Memorandum in Support thereof on August 12, 2022, seeking dismissal pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. [See Docs. 6, 7] On February 9, 2023, the Massachusetts district court entered its Memorandum and Order on the College's motion, and ordered the case transferred to the District of New Mexico, Albuquerque Division, pursuant to 28 U.S.C. § 1631. [See Docs. 27, 28] The case was transferred that day. [See Doc. 29] Plaintiff appealed the Massachusetts district court's decision to transfer the case to the First Circuit Court

of Appeals. [See Docs. 33, 35] On January 13, 2025, the First Circuit entered its Order denying Plaintiff's

appeal for lack of jurisdiction. [See Judgment, Case 23-1169, attached to Notice to Court, Case

1:23-cv-00120-WJ-SCY, Doc. 45 at p. 4.]

## FACTUAL BACKGROUND

San Juan offers an Associate of Applied Science Degree for its students to become Physical

Therapy Assistants ("PTAs"). At the relevant time, the Hybrid Program required students to complete 74

to 75 credits to obtain an Associate of Applied Science Degree. The Online (Hybrid) Program is

comprised of a combination of classroom instruction, laboratory exercises, and clinical rotations. Students

who successfully complete the program are eligible to take a national licensing exam. As with most PTA

programs, San Juan PTA students must complete prerequisites to gain admission into higher level courses.

Principles of Rehabilitation ("PTAP 210") and PTA Procedures III ("PTAP 250") are two such

upper-level laboratory courses. These courses, including the associated lab components, must be

completed before a student can proceed to clinical rotations. In situations where Discrimination and/or

Retaliation is alleged or occurred, it is commonplace that coursework such as Principles of Rehabilitation

("PTAP 210") and PTA Procedures III ("PTAP 250") should be completed under "neutral" supervision

outside of the Program. This was determined and strongly suggested by multiple representatives from the

Commission on Accreditation in Physical Therapy Education (CAPTE), which is the accrediting authority

for the Program. The Plaintiff requested on numerous occasions to complete his coursework under

"neutral eyes", as was suggested by CAPTE as well as other agencies which includes the New Mexico

Higher Education Department (NMHED).

San Juan's PTA program also required students to complete three clinical rotations with at least

one taking place in an inpatient or acute care setting and one in an outpatient setting. The

clinical rotations may only be completed once a student has successfully completed any mandatory

prerequisites, including PTAP 210 and PTAP 250. To expedite clinical rotation placements, students

submit their preferred choices for rotations well in advance on a form titled "Site Selection Forms", yet

the two non-minority students made clear that Millis and the Program would permit them to complete rotations with their employer before the cohort received the "Site Selection Form." The Plaintiff had made a similar (same) request prior to the cohorts first campus visit, but Millis refused to provide the same accommodations as the two non-minority students. Millis continued to deny Plaintiff's request to schedule rotations with "current" and/or previous and/or potential employers thereafter.

On paper, San Juan had a Policy prohibiting students from completing any clinical rotation within the same site/facility where they are currently or have been previously employed full-time in the past two (2) years, yet during the first campus visit Millis explained angrily to the cohort that "even though the Clinical Site Selection Form says "SITES", it means "EMPLOYERS" also!" She continued saying, " I will not allow anyone to complete rotations with an employer, past or present, even if it's at a different site!" Millis explained, "they [the employer] could be paying you during your rotation and I would never know it!" *(Exhibit 1)* Students may have consistently been permitted to perform clinical externships with their former employers, as long as their selected externship is at a different site/facility than where they previously worked prior to and after our cohort, but Millis made clear that this would not be allowed for our cohort. *(Exhibit 2)* This Policy was "secretly" altered for the allowance of the two non-minority students who were already being scheduled to perform rotations with their employer, regardless as to whether or not it occurred at the same site or facility they previously worked. The two non-minority students were already positioned to take advantage of the Policy change that would occur on June 9, 2020 immediately after the filing of Plaintiff's complaint. Also because of the pandemic, the PTA Program shortened the length of the rotations, allowed students to complete two rotations instead of three, and allowed students to perform both of their two externship rotations in outpatient settings.

On June 9, 2020, while having a "reputation as a good student, in good standing" in the PTA Program, the Plaintiff made a complaint to San Juan about PTA students and the PTA Program and the offending parties [Mills and Lacey] were notified via email. The College investigated the complaint – specifically, the Plaintiff's complaint that non-minority students would be permitted to complete clinical rotations with their former employers while he was not. The College found that students were being

permitted to complete rotations with their employer, which Millis had claimed to be a violation of Policy. On August 17, 2020, the Plaintiff filed a complaint with the U.S. Department of Education Office for Civil Rights ("OCR") alleging discrimination and retaliation. OCR used the College's investigation information that was acquired during their limited scope investigation. Specifically, OCR did not perform their own independent investigation. On March 22, 2021, the OCR confirmed Plaintiff's allegations that Kristina Lacey had in fact told students that they could complete skills checks "in clinic, rather than remotely" during a June 2, 2020 Zoom meeting, *(Exhibit 3)* This confirmation is sufficient evidence to substantiate another occurrence of the Plaintiff's allegations of retaliation, as Lacey and/or the College had lied about this specific comment and also removed this comment from the Zoom video copy that was sent to the Plaintiff [evidence tampering]. Admission of said comment would create the opportunity for the student [Plaintiff] to complete "skills checks" without PTA Program staff supervision, just as Lacey had stated would be permitted.

Prior to this lawsuit filing, the Plaintiff submitted a complaint with the New Mexico Higher Education Department (NMHED). The NMHED reviewed the Plaintiff's complaint and exhibits and determined a Resolution Meeting should be scheduled. San Juan College agreed to the Resolution Meeting and agreed to allow for the completion of my degree via a "neutral party" and any additional Settlement discussions the NMHED deemed necessary thereafter in the event that their efforts to quash my NMHED complaint failed. The result of the Meeting was in favor of the Plaintiff and a NMHED representative volunteered to serve as the "neutral" contact as the Plaintiff completed his rotations. In other acts of retaliation, the Program denied my request to access Canvas Notes which would allow me to be updated and prepared for the completion of PTAP-210 & PTAP-250. Also, during the Meeting, the Program requested that I complete nearly double the coursework that the students in my cohort had completed in order to receive a passing grade. When I pointed out the discriminatory and retaliatory act during the meeting, the Program responded saying that they had made an error on their part due to one student in my cohort who was still working toward degree completion, just as I was. After being exposed during the Resolution Meeting as well as for making false claims regarding my access to the Canvas

notes, etc. San Juan contacted the NMHED and reneged on their agreement, stating that the NMHED did

not have the authority to force them to make good on their agreement. Only after exhausting all possible

remedies, the Plaintiff filed this lawsuit.  *(Exhibit 4)*

## UNDISPUTED MATERIAL FACTS

For purposes of this Motion, the following facts are undisputed:

1.     San Juan College is a public college located in Farmington, New Mexico.

2.     From January 2019 through August 2020, Plaintiff Kenneth Pitts was enrolled as a

student in the College's online hybrid Physical Therapy Assistant ("PTA") program containing

both online and in-person components.

3.     Plaintiff alleges that he is "an African-American male who has experienced racial

discrimination as a student [at the College]"

4.     Plaintiff alleges that the College's then PTA Program director, Therese Millis,

"denied [his] many requests for the same or similar clinical rotations situation as 2-3 non-minority

students within the same cohort." *(Exhibit 5)*

5.     Plaintiff further alleges that, upon the filing of his complaint against the primary discriminator

[Therese Millis], San Juan "immediately switched to retaliatory acts." One example of such Retaliatory

acts is Sherry Paxson alerting Millis to my complaint, which should have been kept anonymous, just as

was done for other students who had filed complaints against Millis. *(Exhibit 6)*

6.     Millis was known at San Juan for Retaliation and terrible treatment of College employees,

students and especially against anyone who complained about her, or that she did not like. *(Exhibit 7)*

7.     Students had to complete and pass PTAP-210 and PTAP-250 to demonstrate fundamental

knowledge/skills that would allow them to safely participate in PTAP-270 and PTAP-290. After

experiencing discrimination, the Plaintiff requested to complete PTAP -210 and PTAP-250 under the

supervision of "neutral" grader to avoid further Retaliation, but his request was denied by San Juan. A

"neutral" grader was suggested by CAPTE, which is the accrediting authority for the San Juan College

PTA Program. Any reasonable person would conclude this option as best practice given the circumstances.

8.      Plaintiff sought to select and complete rotations with potential employer(s) [Pro Sports Team] on-site or at affiliate sites. Millis denied Plaintiff's request which was similar or the same as the accommodation permitted for two non-minority students in his cohort, but Dr. Adrienne Forgette later promised that the PTA Program "will extend the same accommodations for your [Plaintiff's] clinical placements that are extended to [the] other students", in an attempt to satisfy my complaint of racial discrimination. *(Exhibit 8)*

9.      Millis admitted to having a discussion with Plaintiff regarding completing rotations with a Sports team. Lacey also admitted to having a similar conversation with the Plaintiff. *(Exhibit 9)*

10.     Plaintiff did not request Alliance Physical Therapy ("Alliance"), a former employer, on his Site Selection Form because Millis had already stated that he could not perform rotations with a previous or current employer in any capacity or site, but Millis had already begun the process of setting up employer rotations for the two non-minority students. *(Exhibit 10)*

11.     Plaintiff sought an externship with ATI Physical Therapy, which was not a former employer of his. Millis denied this request, called him a liar and accused the Plaintiff of having worked for ATI previously or being currently employed with ATI. The Plaintiff included ATI as a choice for his clinical rotation. *(Exhibit 11)*

12.     Millis was terminated, "prematurely" ending her 2019 -2020 contract. *(Exhibit 12)*

13.     Defendant considered retaining Millis as an Associate Professor after determining contract non-renewal, "however, the College had received numerous complaints about Dr. Millis from students in the Program", and instead opted for termination and non-renewal of contract. *(Exhibit 13)*

13.     Defendant knowingly violated their own Policy by allowing Stacey Allen to participate in Appeal Panel Hearing. *(Exhibit 14)*

14.     Plaintiff opted not to complete the mandatory skills checks required to complete PTAP-210 and PTAP-250, as the Program refused to allow the skills checks to be graded

by a "neutral pair of eyes", which was suggested by CAPTE, other agencies, as well the NMHED, as doing so would have exposed him to further Retaliation.

15.    Dr. Amy Cooper contacted Boston Sports Medicine making defamatory and derogatory remarks about Plaintiff, which prompted (BSM) to refuse not only his externship, but also future employment with the Company.

16.    Defendant failed to honor the agreement made with NMHED and the Plaintiff.  *(Exhibit 15)*

## LAW GOVERNING MOTIONS FOR RULE 56 SUMMARY JUDGMENT

**Rule 56. Summary Judgment**

(a) Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

"When a party presents matters outside of the pleadings for consideration, as a general rule 'the court must either exclude the material or treat the motion as one for summary judgment.'"Brokers' Choice of Am., Inc. v. NBC Universal, Inc., 861 F.3d 1081, 1103 (10th Cir. 2017).

## ARGUMENT AND AUTHORITIES

Title VI provides: "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

**I.    Granting for Plaintiff's Claim for Alleged Violations of Title VI is Proper.**

The Supreme Court has explained that "to withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.' " Khalik v. United Air Lines, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678(2009).

II.     Plaintiff has met the plausibility requirement as there is a clear connection between his
        claim of discrimination and his clinical rotations. A plaintiff must include enough
        context and detail to link the alleged adverse action beyond sheer speculation. Bekkem
        v. Wilkie, 915 F.3d 1258, 1274-75 (10th Cir. 2019) (internal quotation marks omitted).
        see also Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 ("The plausibility standard is not akin
        to a probability requirement, but it asks for more than a sheer possibility that a
        defendant has acted unlawfully." (citation and internal quotation marks omitted)).
        Accordingly, this claim is properly granted. **Granting for the Plaintiff's Claim of
        Retaliation for Alleged Violations of Title VI is Proper.**

        To the extent Plaintiff asserts claims of retaliation under Title VI, those should be

granted. To establish a prima facie case of retaliation under Title VI, a plaintiff must first show

that he engaged in protected activity under Title VI and that he suffered adverse action

contemporaneous with or subsequent to such activity. Shahmaleki v. Kansas State Univ., 147 F.

Supp. 3d 1239, 1246 (D. Kan. 2015). Plaintiff has clearly alleged that he suffered adverse

action as a result of his participation in a protected activity. A complaint must contain sufficient

factual allegations to state a claim for relief that is "plausible" on its face. Robbins, 519 F.3d at

1247. "[G]eneral assertions of discrimination and retaliation, without any details whatsoever. . .

are insufficient to survive a motion to dismiss." Khalik v. United Air Lines, 671 F.3d 1188, 1193

(10th Cir. 2012). Here, Plaintiff makes clear, conclusory allegations of retaliation, and provides  detailed

allegations of retaliation. Therefore, his claims are rightly granted. For this reason,

summary judgment in favor of the Plaintiff's claims under Title VI is appropriate.

## SUMMARY JUDGMENT STANDARD OF REVIEW

        The moving party bears the initial burden of demonstrating the absence of a genuine

dispute of material fact and entitlement to judgment as a matter of law. Adler v. Wal-Mart Stores,

Inc., 144 F.3d 664, 670 (10th Cir. 1998). In attempting to meet this standard, a movant who does

not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather,

the movant need simply point out to the Court a lack of evidence for the other party on an essential

element of that party's claim. Id. at 671 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). The

United States Supreme Court has held that summary judgment must be entered against a party who fails

to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. In such a situation, there can be "no genuine issue as to any material fact" since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Once the movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. Id. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." Adler, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." Id. Conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. Bones v. Honeywell Int'l, Inc., 366 F.3d 869, 875 (10th Cir. 2004).

**I.      Plaintiff's Claims for Discrimination Under Title VI are Established as a Matter of    Law.**
        Discrimination claims under Title VI must allege "intentional" conduct. Alexander v. Sandoval, 532 U.S. 275, 280 (2001). To make a prima facie case of discrimination under Title VI, a plaintiff must show that: (1) they belong to a protected class; (2) they suffered an adverse action; and (3) that the challenged action took place under circumstances giving rise to an inference of discrimination. Bird v. Regents of New Mexico State Univ., 619 F. App'x 733, 741 (10th Cir. 2015) (stating the standard for making a prima facie case of discrimination and observing that "[c]ourts often use [the] Title VII proof scheme for Title VI claims.") (internal citation and quotation omitted, alteration in original). Further, a plaintiff must prevail under burden shifting analysis, which requires a prima facie showing, and if such a showing is made the burden shifts to the defendant to provide legitimate and facially nondiscriminatory reasons for its action. If a defendant makes such a showing, the plaintiff must then establish by a preponderance of the evidence that the defendant's reasons were merely pretext for discrimination. Id. at

742. Despite the burden shifting analysis, the "ultimate burden" of showing that a defendant intentionally discriminated against a plaintiff "remains at all times with the plaintiff." Texas Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089, 1093, 67 L. Ed. 2d 207 (1981).

Plaintiff has made a prima facie showing of discrimination and the Plaintiff is entitled to judgement as a matter of law. The adverse action Plaintiff alleges is that he was not permitted to select clinical rotations with a potential and/or previous and/or current employer while two "non-minority" students were permitted to do so. Plaintiff's claim is established for two reasons: (1) Rotation Logs show the two non-minority students being scheduled to complete clinical rotations with their employer, while the Plaintiff was being denied the option to select potential and/or previous employers; and (2) on his Site Selection Form, Plaintiff ranked his sole request to be placed with a past employer lower than another choice because his options were limited by a Policy manipulated by Millis that allowed the two non-minority students options not afforded to him.

## II.    Plaintiff's Claims of Retaliation Under Title VI are Established as a Matter of Law.

To establish a prima facie case of retaliation under Title VI, a plaintiff must show "(1) that he engaged in protected activity under Title VI; (2) that he suffered adverse action contemporaneous with or subsequent to such activity; (3) a causal nexus between the protected activity and the adverse action; and (4) the school knew of the retaliation and did not adequately respond." Shahmaleki v. Kansas State Univ., 147 F. Supp. 3d 1239, 1246 (D. Kan. 2015). To the extent that Plaintiff alleges retaliation under Title VI, his claim is established as a matter of law. Plaintiff alleges the College retaliated against him by first exposing his complaint to Millis and Lacey, the offending parties, the day of his complaint with the College. This is not speculative in any regard. After he filed a complaint with the College on June 9, 2020, Sherry Paxson, Dean of Health Sciences at that time, immediately alerted Millis and Lacey to his complaint. Prior student complaints against Millis had been kept anonymous as the College was aware that those who filed complaints against Millis and the Program had experienced retaliation thereafter.

10

## CONCLUSION

WHEREFORE, Plaintiff Kenneth Pitts asks the Court to grant Plaintiffs request Summary

Judgment in favor of the Plaintiff and enter such further relief it deems just and proper.

Respectfully submitted by,
/s/ Kenneth A. Pitts
Dated: April 10, 2025

## CERTIFICATE OF SERVICE

I, Kenneth A. Pitts, the Plaintiff, hereby certify that I have served a copy of the forgoing Motion, via email to: lsalganek@mstlaw.com and llarkin@mstlaw.com on:

Luke A. Salganek
Miller Stratvert, P.A.
200 West DeVargas Suite 9
Santa Fe, NM 87501
(505) 989-9614
lsalganek@mstlaw.com

Laureana Larkin
Miller Stratvert, P.A.
200 West DeVargas Suite 9
Santa Fe, New Mexico 87501
(505) 989-9614
llarkin@mstlaw.com

/s/ Kenneth A. Pitts
Kenneth A. Pitts
Dated: April 10, 2025

# Exhibit 1

< **Jamie SJC**
7154324243

10:09 PM
with anyone please.

**J** I won't!
10:20 PM

Thanks! Btw, do you recall Dr. T mentioning the information she sent in the email regarding performing rotations with previous or current employers . . . ??
10:42 PM

**J** No it wasn't allowed. In the past from why I understood.

What**
10:44 PM

I don't recall her mentioning in the Zoom meeting either.
10:51 PM

**J** Yeah I think it was a recently new development my guess is in part due to covid.
10:52 PM

 Gmail

Kenneth Pitts <pittsk80@gmail.com>

## Fw: Tammy Duval (PTAP-Policies-And-Procedures) just sent you a message in Canvas.
1 message

**Kenneth A. Pitts** <kapitts94@my.sanjuancollege.edu>
To: Kenneth Pitts <pittsk80@gmail.com>

Thu, Jul 30, 2020 at 2:28 PM

**From:** Tammy Duval <notifications@instructure.com>
**Sent:** Thursday, July 30, 2020 2:01 PM
**To:** Kenneth A. Pitts <kapitts94@my.sanjuancollege.edu>
**Subject:** Tammy Duval (PTAP-Policies-And-Procedures) just sent you a message in Canvas.

### Program Discrepancies

To whom it may concern,

Please let it be known that the following statement is true to the best of my knowledge and describes events as I recall.

In the spring of 2019, during the a lab practical period, Dr. Therese Millis discussed the process of the clinical externships. We (being the 2020 PTA cohort) were told, as a group, that we could not do a rotation at a facility in which were currently or previously been an employee of. We were also told there were 3 rotations: a 5 week, and two 7 week rotations. One of the 7 week rotations had to be done at an inpatient facility.
During the fall of 2020, I was speaking with a student from California and he told me that he and another student were going to be doing their clinical externships with the company they are currently employed by, but they will be performing the rotations at a different facility, as the company has several locations. I was under the impression, during the conversation, the facility they are employed by is an outpatient facility and they were to do all 3 rotations with the same company, but different locations.

I would also like to address a Zoom meeting that was held by Dr. Millis during the spring of 2020. She stated several locations were cancelling rotations due to COVID-19 and the program was working on finding alternatives. To my recollection she did not say we could do a rotation with a previous or current employer during this Zoom meeting. There was an email that was sent out at the beginning of June, stating we would be allowed to do our rotations with previous/current employers at that time. To my knowledge that is the first and only time that was allowed as an option.

Further more. I would like to add that I feel the PTA program has done a disservice to its students by not being forthcoming and allowing students to choose the other options CAPTE has made available during the time of this pandemic. I believe we should have been given the opportunity and be allowed to choose a clinical site with a CI willing to cooperate with the program to conduct skills checks and determine level of efficiency in lieu of the virtual labs. Other options to complete the didactic portion were never made available.

If you have any questions please feel free to email me at tduval87@my.sanjuancollege.edu or call 575-644-5084.

Sincerely,
Tammy R. Duval, ATC

 **Tammy Duval**

# Exhibit 2

# GENERAL AFFIDAVIT

STATE OF __NEW MEXICO__

COUNTY OF __DONA ANA__

PERSONALLY came and appeared before me, the undersigned Notary, the within named
___Shelby Hathaway___, who is a resident of __Dona Ana County__, __State of New
Mexico__, and makes this his/her statement and general affidavit upon oath and affirmation of
belief and personal knowledge that the following matters, facts and things set forth are true and
correct to the best of his/her knowledge.

In regards to KENNETH PITTS v. SAN JUAN COLLEGE: While in the PTA program at San Juan
College, we were to complete a set amount of clinical  hours at clinical sites that would be
approved by Dr. Millis. While completing lab hours on campus at San Juan College, Dr. Millis
stated that she would not approve any of the students to use a current or previous employer as
a clinical site.

DATED this the __1__ day of __April__, 20 __25__

_____
Signature of Affidavit

SWORN to subscribed before me, this __1__ day of __April__, 20__25__

_____
NOTARY PUBLIC

STATE OF NEW MEXICO
NOTARY PUBLIC
BRENDA VANEGAS
COMMISSION #1080258
EXPIRES APRIL 29, 2028

My Commission Expires:

_____

# Exhibit 3



UNITED STATES DEPARTMENT OF EDUCATION
OFFICE FOR CIVIL RIGHTS

1244 SPEER BLVD., SUITE 310
DENVER, CO 80204-3582

REGION VIII
ARIZONA
COLORADO
NEW MEXICO
UTAH
WYOMING

March 22, 2021

Mr. Kenneth Pitts
131 Washington St. #35
Brighton, Massachusetts 02135

*By email only to:* *pitts80@gmail.com*

Re:     San Juan College
        Case Number: 08-21-2015

Dear Mr. Pitts:

On August 17, 2020, the U.S. Department of Education (Department), Office for Civil Rights (OCR), received your complaint of discrimination against San Juan College (College). You alleged that the College retaliated against you because you filed an internal discrimination complaint on June 9, 2020. OCR investigated whether faculty in the College's Physical Therapist Assistant Program (PTAP) retaliated by providing false information or otherwise interfering in the investigation of your internal complaint, thereby delaying the processing of the complaint and entry into clinical rotations.

We are responsible for enforcing Title VI of the Civil Rights Act of 1964 (Title VI) and its implementing regulation at 34 Code of Federal Regulations (C.F.R.) Part 100, which prohibit discrimination on the bases of race, color, or national origin in activities and programs that receive Federal financial assistance from the Department. Individuals filing a complaint, participating in an investigation, or asserting a right under Title VI are protected from retaliation, intimidation, or coercion by 34 C.F.R. § 100.7(e). As a recipient of Federal financial assistance, the College is subject to these laws and regulations.

**Legal Standard**

Individuals filing a complaint, participating in an investigation, or asserting a right under Title VI are protected from retaliation, intimidation, or coercion by 34 C.F.R. § 100.7(e).

OCR applies a preponderance of the evidence standard to determine whether evidence is sufficient to support a particular conclusion. Specifically, OCR examines the evidence in support of and against a particular conclusion to determine whether the greater weight of the evidence supports or is insufficient to support the conclusion.

OCR's investigation included careful review of documents submitted by the College and you. OCR also reviewed a Zoom meeting that took place on June 2, 2020 and conducted interviews with College staff and you. Based on a preponderance of the evidence, we found insufficient evidence to conclude that the College retaliated against you as alleged.

---

Page 3 of 5 - Mr. Kenneth Pitts
Case Number: 08-21-2015

On June 9, 2020, you filed an internal complaint with the College alleging that College faculty members and students discriminated against you on the basis of race.[1] The investigative records reflect that, initially, Vice President for Student Services (VPSS) reviewed the allegations relating to faculty conduct, and the Vice President for Student Learning (VPL) reviewed the allegations relating to the student conduct allegations. The following shows the complaint processing timeline:

| Date | Investigative Action |
|---|---|
| June 9, 2020 | You filed an internal complaint with the College raising six (6) allegations against students and faculty members. The internal complaint was assigned to the VPL and VPSS for initial processing. |
| June 23, 2020 | The VPL completed a preliminary review of the faculty conduct issues and discussed her preliminary findings with you, but you were dissatisfied with the findings. |
| July 7, 2020 | The VPL forwarded the issues she investigated to College's Section 504/Title IX/Discrimination Investigator (Investigator). |
| July 24, 2020 | The VPSS completed its preliminary review of the student conduct issues. |
| July 29, 2020 | The Investigator initiated her investigation of the internal complaint. |
| August 27, 2020 | The Investigator completed her investigation of the internal complaint. |

From June 16, 2020 to August 27, 2020, the three investigators interviewed and exchanged follow up emails with seven (7) student and faculty witnesses, including you. During the time the complaint was assigned to the Investigator, she reviewed a number of documents from as far back as Spring 2019 through August 2020.

You identified three instances of retaliation in what you describe as faculty members interfering with your academic process, providing false information, or otherwise engaging in retaliatory conduct against you. We considered each of your allegations.

==The first instance relates to a faculty member allegedly suggesting in a June 2, 2020 Zoom meeting that students may be able to complete a course in person and then later retaliated by not allowing you to do so. OCR reviewed a digital recording of the Zoom meeting and confirmed that the instructor told students that they may be able to perform their skills test and practical in clinic, rather than remotely, for a future course, PTAP250.== OCR noted however, that the possibility of returning to in-person learning was contingent upon Covid-19 conditions. OCR's interviews with College faculty confirmed that no students were allowed to perform the PTAP-250 skills test or practicals in-clinic. You were offered opportunities to perform the skills test and practical remotely. Because you were treated in the same manner as all other students enrolled in the program with respect to remote learning, we cannot conclude that you were subjected to an adverse action. Moreover, OCR finds that the Covid-19 pandemic, and not your protected activity, was the cause for the College not offering you an opportunity to perform your skills test and practical for PTAP-250 in clinic rather than remotely.

---

[1] This letter does not address the merits of your race-based discrimination allegation. OCR is addressing that matter separately in Case Number 08-21-2015.

---

The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.

www.ed.gov

 Gmail

Kenneth Pitts <pittsk80@gmail.com>

## statement
1 message

**Tammy Duval** <tduval0414@gmail.com>                    Thu, Feb 11, 2021 at 3:10 PM
To: pittsk80@gmail.com

To whom it may concern,

Although I do not recollect the exact dates of the zoom meetings conducted by the staff of the San Juan College PTA program, I do recall what the meetings were in regards to.
There were 2 particular meetings at the beginning of the Covid-19 pandemic to discuss how the online program was going to conduct our face to face labs, as we were unable to travel and quarantine.  Ideas such as virtual labs, or postponing labs were discussed.  During one of the zoom meetings the idea of having the CI's conduct skills checks was considered.  The details of this happening were vague, but we, the students, would have to find a CI willing to conduct the skills checks either before or during our clinical rotations.
The program ultimately decided to have the online class perform skills checks virtually, taking away any other option to have a skilled, trained professional conduct the skills checks in person.
If you have any questions, you may contact me at 575-644-5084 or via email at tduval0414@gmail.com

Tammy Duval

# Exhibit 4

4/2/25, 8:31 PM                                                                 Gmail - Follow Up Question

# M Gmail

## Follow Up Question
23 messages

**Kenneth Pitts** <pitts480@gmail.com>                                                                 Mon, Jul 26, 2021 at 2:01 PM
To: "Mathews, David, NMHED" <David.Mathews@state.nm.us>, "Armijo, Alicia, NMHED" <alicia.armijo@state.nm.us>

Hello Mr. Mathews and Ms. Armijo,

Thank you for taking time to speak today. If possible, I would like clarification on your request for "neutral grader" information.

Can you tell me exactly what information you desire?

Also, will the requested information be provided to the College after it is submitted to you?

Best regards,
Kenneth Pitts, SPTA
SJC SIDw 0261717
614.940.9232

**Mathews, David, NMHED** <David.Mathews@state.nm.us>                                      Mon, Jul 26, 2021 at 3:55 PM
To: Kenneth Pitts <pitts480@gmail.com>, "Armijo, Alicia, NMHED" <Alicia.Armijo@state.nm.us>

Hi Mr. Pitts-First, yes the information will be provided to SJC.

I'm sure you realize that asking for a neutral grader is complicated. Normally, an instructor at a school would grade his/her students. I understand why you don't want a grader from SJC, but the grader needs to be someone the college will trust. For example, perhaps an instructor at another school or a therapist at a hospital or health care facility?



**David Mathews**
General Counsel

2044 Galisteo Street, Suite 4, Santa Fe, NM 87505

David.Mathews@state.nm.us

(505) 469-2395

Follow @NMHigherEd on Twitter, Facebook & Instagram

Sign up for your free COVID-19 vaccine today
at VaccineNM.org!

**Kenneth Pitts** <pitts480@gmail.com>                                                                 Thu, Jul 29, 2021 at 2:33 PM

[Quoted text hidden]

---

4/2/25, 8:31 PM                                                                 Gmail - Follow Up Question

**Mathews, David, NMHED** <David.Mathews@state.nm.us>
To: Kenneth Pitts <pitts480@gmail.com>
Cc: "Armijo, Alicia, NMHED" <Alicia.Armijo@state.nm.us>

Hello Mr. Mathews,

Thanks for your prompt response. I can only just how complicated the process may be, but I also must keep in mind that the College has displayed a lack of integrity on multiple occasions and in many ways during this process. It is not my intention to cause the College any extra stress, but I cannot allow them to reach out to the grader in an attempt to damage my credibility and thwart my opportunity to complete the degree.

As was mentioned in our meeting yesterday, the San Juan College PTA Program was planning to send out documents to clinics for the purpose of the student completing the skills checks and lab practicals under the supervision of the students selected grader. Why is it that when I request the very same thing that they were considering anyway, that the trust issue comes into play. The College and the PTA Program are the ones who cannot be trusted, not me, nor the individual I will select if there is an agreement.

Furthermore, the CAPTE representatives have made it clear that where discrimination has occurred, the Program MUST employ a grading alternative, as they have lost their right to grade.

This said, I must ask that when I provide the name(s) of the graders that NMHED requires that the College does not contact the individual(s), nor give their names to anyone else. I request to complete the skills checks and lab practicals as the forms require and send them back to the College for grade submission, just as Kristina Lacey stated in the Zoom meeting.

I ask that the PTA Program provide me with an updated Clinical Site Database List. Having that excel sheet document will be a great help in my selecting a neutral grader and clinical rotation site in which to complete my clinical hours.

Also, I ask that the College:

· set up contacts with:
 > ATI Physical Therapy
   ClinicalRotation@atipt.com

 > Alliance Physical Therapy
   avalenzuela@nrppainpt.com

 > Marathon Physical Therapy
   aaugusto@marathonpt.com

 > Mass General Hospital (MGH)
   Information previously provided (please indemnity as has been requested by MGH)

Thanks for your time.
[Quoted text hidden]
[Quoted text hidden]



image001.png
28K

**Mathews, David, NMHED** <David.Mathews@state.nm.us>                                      Thu, Jul 29, 2021 at 3:06 PM
To: Kenneth Pitts <pitts480@gmail.com>

Mr. Pitts-I understand your concern about SJC contacting the grader(s). I can be the contact.

4/2/25, 8:31 PM

Both Alicia and I have a very busy afternoon and I'll get a more detailed answer to you when I can do so. I did want you
to know I had received your emailed concerns and will devote more attention to them when I'm free.

[Quoted text hidden]
[Quoted text hidden]
[Quoted text hidden]

[Quoted text hidden]

**David Mathews**

General Counsel

2044 Galisteo Street, Suite 4, Santa Fe, NM 87505

David.Mathews@state.nm.us

(505) 469-2395

Follow @NMHigherEd on Twitter, Facebook, & Instagram

Sign up for your free COVID-19 vaccine today
at VaccineNM.org!

Kenneth Pitts <pitts680@gmail.com>                                          Tue, Aug 3, 2021 at 9:22 AM
To: "Mathews, David, NMHED" <David.Mathews@state.nm.us>, "Armijo, Alicia, NMHED" <alicia.armijo@state.nm.us>

Hello Mr. Mathews and Ms. Armijo,

I hope you're having a wonderful week. Yes, I like the idea of you being the contact for my grader. I look forward to
hearing from you when you have the time.

Enjoy your day,
Kenneth Pitts, SPTA
SJC SID# 0261717
614.940.9222
[Quoted text hidden]

4 attachments

NEW MEXICO
HIGHER EDUCATION
DEPARTMENT

image001.png
28K

# Exhibit 5

**Responding Party Interview Summation:**

Ms. McCauley was interviewed on July 15, 2020, via telephone by Dr. Appleman. No other parties were present. Dr. Appleman relayed Mr. Pitt's account of the allegation to Ms. McCauley. Ms. McCauley stated that she did not explicitly remember the image. Ms. McCauley stated she may have sent the image but reported it would have been sent related to "tired" and "poor" message without her recognizing the possibility of the image being received as insensitive and/or degrading. During the interview, I asked Ms. McCauley if she understood, now, how others may have been negatively affected by such a message. Ms. McCauley affirmed and expressed regret. Ms. McCauley offered to write an apology. I let her know if she provided one, I would include it in my report.

**Additional Information Provided By Responding Party:**
Ms. McCauley provided an apology via email. Provided as an attachment to this report.

2. **Did the administration of the PTA program, with regard to the grading of skills checks/lab practicals and the denial of the Mr. Pitt's request to perform clinical rotations at certain facilities violate San Juan College's Student Conduct Code and/or the Non-Discrimination Policy, specifically on the basis of race?**

**Allegation One**

**Mr. Pitts Interview Summation:**

Mr. Pitts was interviewed on August 13, 2020, via phone by Stacey Allen, he also provided written responses on August 19, 23, 24, and 25, 2020. Mr. Pitts stated that Dr. Millis denied his specific request to perform any of the rotations with a "previous or current employer" while permitting and already having scheduled rotations for Almeida and Heath with their current employer. During the campus visit, Mr. Pitts said he was told by Heath and Almeida that they would complete all of their rotations with their current employer. Mr. Pitts stated he then approached Dr. Millis to see if something had changed since their previous conversation prior to the campus visit regarding rotations with a previous or current employer by way of requesting to perform rotations in the very same manner that Heath and Almeida were already scheduled.

Mr. Pitts stated he was first learned from both Almeida and Heath their rotations with their current employer during the Spring semester 2019. Mr. Pitts stated Almeida and Heath reiterated this in the Durango CO airport during the Fall semester of 2019.

Mr. Pitts stated he received three denials during the Spring semester of 2019. The first occurred through email and the second by phone shortly after the email message. The third denial happened during the Spring 2019 campus visit. During this visit, Mr. Pitts stated he was denied yet again, even though he was requesting the same accommodations he believed were received by Heath and Almeida.

Mr. Pitts stated that no one else but Dr. Millis and himself were present during any of the communications regarding the denial of his choice of the clinical site. He was not aware if anyone had overheard the conversation between himself and Dr. Millis.

Mr. Pitts stated he had a phone conversation with Ms. Lacey during the Spring semester 2020 to discuss an assignment. During this conversation, Ms. Lacey asked why he had such limited time. Mr. Pitts informed Ms. Lacey that he was working his way around a work schedule as he had gainful employment. He explained that he had been working with a sports team recently and had worked for multiple sports teams in the past. Mr. Pitts also shared that he had been upfront with the team representative regarding the PTA Program and upcoming clinical rotations and how much of a deterrent during the interview and hiring process. Mr. Pitts also stated that Ms. Lacey's solution was to "drop out of the program and restart later." Mr. Pitts stated this was not helpful seeing that Almeida and Heath were scheduled to complete their rotations with their employer. Mr. Pitts hoped that Ms. Lacey might provide a solution to completing the program while working for an employer.

Mr. Pitts stated that he provided his choice, Assessment Technologies Physical Therapy, Inc. (ATI) for clinical rotation to Lisa Easley through email on May 9, 2019, and spoke with Dr. Millis by phone thereafter. He stated that he did not work for them. Dr. Millis responded by phone. The discussion regarding ATI came by way of another occasion where Dr. Millis asked if he had worked for or was currently working for ATI Physical Therapy after Mr. Pitts requested that Dr. Millis contact ATI for rotations. He stated that Dr. Millis told him about the working world that it forbids rotations with previous and current employers. Mr. Pitts shared with Dr. Millis that ATI Physical Therapy has many clinics in the Boston area, and hoped to possibly perform multiple rotations across the company. Mr. Pitts stated that Dr. Millis then began quoting the PTA Program policy that forbids rotations with previous or current employers, even if done at different sites, just as she had previously in regard to Alliance Physical Therapy. Mr. Pitts stated, "In my mind, that's a denial."

Mr. Pitts stated that when Dr. Cooper and Ms. Lisa Easley tried to set up an Mr. Pitts' clinical rotation, the clinical rotation site indicated they were cancelling clinical rotations because of COVID-19." On June 9, 2020, Dr. Millis sent out an email changing the policy. Mr. Pitts said he received notification from Dr. Millis on the same day that his rotations were set up.

Mr. Pitts said he was notified by Dr. Cooper and Ms. Lisa Easley that his first rotation was set and they were working on the second rotation with Mass General Hospital (MGH) and it was in the works to confirm. Mr. Pitts stated that MGH had sent him an email saying that Mr. Pitts already set up and had nothing else to say, everything was fine. Mr. Pitts stated he had Dr. Cooper and Ms. Lisa Easley double-check the placement and that they responded that MGH has not committed to having him as a student. Mr. Pitts said he had asked Dr. Cooper specifically, "have you checked with other sites that I have requested." At that point, Mr. Pitts shared a recently checked with a representative at Worchester Physical Therapy Services. He spoke with the representative a week or so prior to sending the message to Dr. Cooper to double-check my sites. The individual checked all his emails from that day and mentioned San Juan College. Mr. Pitts states that Worchester later received a message from Dr. Cooper about the selection sites. She said that they reached out to Worchester Physical Therapy a while back but have not heard back from them. Mr. Pitts states that he knows that was not true because he spoke to the representative about a week or two before prior to the message

# Exhibit 6

2/16/23, 12:30 PM                                        Mail - Kenneth A. Pitts - Outlook

### concerns

Sherry L Paxson <paxsons@sanjuancollege.edu>
Tue 6/9/2020 7:15 PM
To: Kenneth A. Pitts <kapitts94@my.sanjuancollege.edu>
Cc: MillisT <MillisT@sanjuancollege.edu>;Kristina Lacey <laceyk@sanjuancollege.edu>

Hello Ken,

Thank you for contacting me today regarding your concerns in your program.  I want to assure you that I take this seriously and will look into this thoroughly. I want to recap our conversation to make sure I am accurate before moving forward.

You had three main concerns;

1. You had been told by Dr. Millis that you could not do a clinical rotation with a previous or current employer.  You had information that other students were allowed to use a current of previous employer as a clinical site and you felt this was unfair.

2. You had experienced "bullying" in the form of raised voices and "antagonizing" and "racial comments" during your first on campus lab experience by two other students.  You had also experienced a "racially insensitive" comment in a group text.

3. You are uncomfortable with online learning in the PTAP 210 course and are asking to substitute volunteer or pro-bono work at a clinic instead of the prescribed course work.

I will be contacting your director and instructors to get more information, in the meantime, I recommend that you keep up with your current class so that this does not disrupt your progress towards your goal of becoming a PTA.

I have a family event later this week, but will continue looking into this matter.  It may be early next week before I get back to you.

Regards,

Sherry Paxson M.A. Ed.
Dean, School of Health Sciences
San Juan College
Farmington, NM
paxsons@sanjuancollege.edu

# Exhibit 7

STATE OF NEW MEXICO )
                     ) ss.
COUNTY OF SAN JUAN )

**AFFIDAVIT OF AMY COOPER**

COMES NOW Amy Cooper, being first duly sworn upon oath, and states as follows:

1.  I am employed at San Juan College as a Professor and the Assistant Director of the Physical Therapist Assistant ("PTA") Program. I have worked at San Juan College since 2003. I became the Interim Assistant Director in 2011, and on July 1, 2014, I officially became the Assistant Director and the "interim" title was dropped from my position.

2.  Therese Millis has been my direct supervisor in her role as the Director of the PTA Program since 2011.

3.  I have had concerns about Therese Millis' supervision of the PTA Program. My concerns were about her management of the Program as well as her interpersonal skills and behavior toward employees of the College. I frequently felt that Therese Millis' planning and organization was poor, and it was not uncommon for faculty to be told at the last minute that they were teaching a course or would be covering a class. I believe the majority of these last-minute scheduling issues were avoidable, and that they caused disorganization in the Program. I also believe Dr. Millis was frequently combative, obstructionist, and that she behaved inappropriately to myself and others.

4.  By way of example, sometime around late summer 2018, I witnessed Dr. Millis yell at an employee in an open office area of the College. Following the incident, the individual came to my office and cried about the incident. That individual left employment with the College within about two months after that incident.

5.  I was the primary individual tasked with working on an accreditation report for the Commission on Accreditation in Physical Therapy Education ("CAPTE"), which was due in May 2019. Although CAPTE accreditation reports are usually written by the Director of the PTA Program, Dr. Millis delegated the assignment to me.

6.  On more than one occasion, Dr. Millis would not give me access to the information I needed to complete the accreditation report. On other occasions, Dr. Millis would prevent me and the faculty from having meetings which I believed were necessary to prepare the Program for its accreditation review.

7.  Around the same time, several individuals in the PTA Program were discussing finding other employment. The PTA Program had a high turnover rate, and I believe that the reason for the turnover and dissatisfaction for those working in the Program was due to Dr. Millis' behavior and disorganized leadership.

8.  Because I was concerned about Dr. Millis' behavior and I felt her leadership was jeopardizing the future of the PTA Program and its ability to maintain its accreditation, and because I believed the high turnover in the Program was attributable in large part to Dr. Millis, I made a complaint to the College's Human Resources Department on December 11, 2018. A true and correct copy of that complaint is attached as **Exhibit 1**.

9.  In February 2019, Sherry Paxson assumed the role of Interim Dean of Health Sciences. Shortly after she took that position, I spoke with her about my concerns regarding Dr. Millis' management of the PTA Program and her behavior toward me and others in the Program. Shortly after speaking with Dean Paxson in February, I also communicated to her my concerns about Dr. Millis' lack of communication and my fear that Dr. Millis would retaliate against me.

2

10.    In June 2019, the College's HR Department issued its Investigation Report and provided me with a copy of the report.

11.    I'm aware that on a Sunday in late 2019, Dr. Millis asked a faculty member in the PTA Program to cover a class the following Monday. The subject matter of the class was complex, and I believe Dr. Millis could have avoided the short-notice to the faculty member if she had planned in advance to cover the class and that it was unfair to the faculty member to make that request. On another occasion in late 2019, Dr. Millis asked me to cover a class. I put a substantial amount of time into preparing for the class and, the morning of the class, Dr. Millis told me that she had changed her mind and had decided to teach it herself. On another occasion in late 2019, Dr. Millis asked me to cover a class on the morning of the class. I was unprepared when I taught the class. I believe that Dr. Millis had advance notice of the need for coverage for that class, however, she failed to make plans before the morning of the class to arrange for proper coverage. It has not been uncommon for Dr. Millis to delay in providing faculty with teaching assignments and I believe her lack of planning has been unfair to faculty and has been detrimental to the students.

I have continued to work with Dr. Millis during the spring 2020 semester. Although the College has faced new challenges since March 2020, I do not think Dr. Millis' behavior or her management style has changed.

3

FURTHER AFFIANT SAYETH NAUGHT.

_____
AMY COOPER

SUBSCRIBED AND SWORN TO BEFORE ME this 10th day of June, 2020, by AMY COOPER.

My commission expires: 4/10/2021

_____
Notary Public



4

Record on Appeal 0030

Record on Appeal 00

# Exhibit 8

from Dr. Cooper. Mr. Pitts stated that after Dr. Cooper sent the message on a Friday, he had called the Worchester representative the following Monday. Mr. Pitts stated that the individual said, I had just received a message from the College this morning.

Mr. Pitts states that Dr. Millis stated that she had announced the policy changes during the Zoom meeting she held on April 23, 2020, with the class. She did not announce that students could perform rotations with a previous or current employer at different sites during this Zoom meeting. Mr. Pitts stated that the announcement was made only on June 9, 2020, after he filed his complaint of discrimination, and he believes Dr. Millis changed the policy to counter the allegations made in his complaint.

**Responding Party Summation:**

Dr. Millis responded to Dr. Forgette on June 12, 2020, via email. Dr. Millis was asked to describe the Physical Therapist Assistant Program policy on allowing students to perform clinical rotations with previous or current employers. Dr. Millis stated that when students sign up for an externship she informs students that would not be able to extern at a site currently or previously worked at in the past two years. The purpose is for students to experience different settings and CI's (Clinical Instructors) who may have other physical therapy talents that are not in the present in the clinic where they work.

Dr. Millis stated the policy had changed with the pandemic, and the PTA program had loosened the restrictions. She also states this was indicated in an April 25th Zoom meeting held with Mr. Pitts' cohort. She could not recall whether Mr. Pitts was present. At the time of this response, no students to date have taken advantage of the offer.

Dr. Millis stated that no students have completed rotations in Mr. Pitts' cohort and none have asked to extern at a site they are working at as a technician. Mr. Almeida and Mr. Heath work for Team for Life in which the central office is located in San Luis Obispo, CA. They have about 22 clinics distributed between the LA and San Luis Obispo area, Arizona and North Carolina. The owner of Team for Life also has a similar guideline for their technicians who are pursuing a PTA or DPT in which they cannot extern at the site where they work as a Technician.

Dr. Millis stated that in Spring 2019, Mr. Pitts had asked her if he could extern with a professional sports team he worked with which is not a typical clinical setting. Typically Athletic Trainers are used to focus on this population. Dr. Millis stated she was not sure in what capacity he worked for this professional sports team but felt he would benefit more from working in a standard outpatient clinic setting. Dr. Millis stated that she did accommodate his request to work with his previous mentor Scott Waugh from this team at another facility which is scheduled in Fall 2020 with Massachusetts General Hospital/MGH Sports.

Dr. Amy Cooper stated that she stated in an email to Mr. Pitts on July 17, 2020, "We have been working on securing a clinical affiliation agreement with Massachusetts General Hospital (MGH). It is unclear whether or not we will be successful in obtaining a fully executed contract with MGH. Dr. Cooper stated that setting up clinical placements involves two steps: 1) confirming that the clinical site is willing to provide clinical education to the student and 2) establishing a fully executed clinical affiliation

You forwarded this message on Sun 7/5/2020 8:03 PM

Adrienne Forgette
Fri 6/26/2020 2:08 PM
**To:** Kenneth A. Pitts

Kenneth

I want to update before the weekend:

It is unlikely that I will be able to obtain a recording of the Zoom meeting—it was apparently run from Dr. Millis's own account and not a college account and was not posted to Canvas.  Dr. Millis has left the college and I do not expect to receive access to the recording.  Regrettably, I also do not expect that I will be able to obtain answers to some of the specific questions you asked below.

On the other hand, Dr. Cooper has affirmed that we will work with you on your placements and will extend the same accommodations for your clinical placements that are extended to other students.  I encourage you to be in touch with her if you wish to change any of these placements.  Dr. Cooper will also need to know about which option you will use for completion of PTAP 210.

I am off until Monday, but please give me a call then if you'd like to discuss in more detail.

Take care.

Adrienne

We can do this—together.

# Exhibit 9

agreement between the clinical site and the SJC PTA program. Dr. Cooper stated she has only been involved with the second step of the process (establishing a clinical affiliation agreement)

Ms. Lacey was asked if she recalled having a conversation with Mr. Pitts about options that would encompass meeting the program requirements while considering a gainful employment opportunity. She stated that she recalls having a phone conversation with Mr. Pitts in the spring 2020 semester that was prompted by his performance in his courses at the time. I wanted to check in on how he was doing being that he was not performing as she had remembered from a previous course and from what she knew of his academic performances prior to this point of the course. In their conversation, Mr. Pitts had indicated that he had been recently presented with his "dream job" and was uncertain if he should take it or not. He felt that he would have a difficult time completing the program, specifically the clinical externships if he took the job. Mr. Pitts indicated that he was considering his options which included remaining in the program or potentially leaving the program for this job. Ms. Lacey stated that she reiterated to Mr. Pitts what the rest of the program would entail to ensure that he was provided with information to make an informed decision. She said she indicated to Mr. Pitts that she was unable to make the decision for him, but also reminded Mr. Pitts that he was on one of the final courses of the program. Ms. Lacey stated she explained to him from a personal perspective that since he was close the finalizing the PTA program, that he may want to consider completing the program to provide multiple opportunities for him rather than removing an opportunity. According to Ms. Lacey, Mr. Pitts was appreciative of the support and encouragement during the conversation.

Ms. Lacey was asked if she had a discussion with Mr. Pitts in which she may have suggested that he drop out of the program and restart later. She stated that in this conversation, Mr. Pitts was encouraged to continue to complete the PTA program to provide additional opportunities in his future. Mr. Pitts continued to talk about this job that he had been hoping for. Ms. Lacey had expressed to Mr. Pitts that although she was unable to provide any further information, he could potentially discuss the matter with the program director to determine his options on re-entry to the program if he chose to withdraw from the program. Ms. Lacey stated that it was never stated that he should "drop out of the program and restart later."

**Additional Information provided by the Responding Party:**
Email Correspondence between Dr. Forgette and Mr. Pitts regarding the concerns expressed in his complaint filed. It includes updates/responses to Mr. Pitts' complaint. The emails are dated June 16, 18, 19, 20, 23, 24, and 26, 2020.

On June 26, 2020, Dr. Forgette responded by email to Mr. Pitts regarding access to the Zoom Meeting held on April 23, 2020. Dr. Forgette stated that it was unlikely that she would be able to obtain a recording of the Zoom meeting—it was apparently run from Dr. Millis's own account and not a college account and was not posted to Canvas. Dr. Forgette stated that Dr. Millis has left the college and she did not expect to receive access to the recording. Dr. Forgette requested assistance from the San Juan College Information Technology Center to recover it, but they were unable to assist.

Mr. Pitts submitted a Clinical Site Selection Form to Ms. Easley on June 3, 2020. The form requires two selections per clinical rotation for a total of six. Mr. Pitts submitted three selections per clinical rotations for a total of nine. According to the PTA program rotation log, the PTA program began their attempts to set up clinical rotations for Mr. Pitts as early as June 28, 2019 beginning with Mass General

# Exhibit 10

## TYLER ALMEIDA

| PTAP 230 | PTAP 270 | PTAP 290 |
|---|---|---|
| Rtn cancelled due to COVID-19 & no release from SJC Administration. Rtns delayed to Aug 2020. | | |
| 4 Week Rotation | 7 Week Rotation | 7 Week Rotation |
| May 26-June 19, 2020 | August 24-October 9, 2020 | October 12-November 27, 2020 |
| San Luis Sports Therapy (Rtn Lctn)    OP | Bella Vista Transitional Care Center    IP | San Luis Sports Therapy (Rtn Lctn)    OP |
| 1106 Walnut Street #110 | 3033 Augusta Street | 890 Shasta Avenue |
| San Luis Obispo, CA 93401 | San Luis Obispo, CA 93401    (805) 544-5100 | Morro Bay, CA 93442 |
| Kallie Slette, PT, DPT, SCCE    (805) 788-0805 x262 | contact-bellavista@ensignservices.net | Kallie Slette, PT, DPT, SCCE    (805) 788-0805 x262 |
| Student Program Mgr: kallie.slette@slsportstherapy.com | (T-This is like Rosewood-Reno. Need contract.8/8/19 le) | Student Program Mgr: kallie.slette@slsportstherapy.com |
| M4L-education@movementforlife.com | | M4L-education@movementforlife.com |
| Email sent to KS for Jessica, PJ & Tyler 11-14-19  all 3 dts TM fwdd KS email string 11/18/19 w/TMFL Ap. KS needs TA's Ap ASAP for PTAP 230.  Emailed  TA thru CANVAS  to send ap to KS ASAP.  Lctns?  Morro Bay, Arroyo G. & San Luis.  Also need PTAP 290.  11/20/19  le TA hasn't confirmed ap to KS.  Emailed  TA thru CANVAS asking if he emailed it to KS.  12/3/19  le TA emailed  he sent to KS.  Emailed  TA thx. 12/10/19  le Waiting for KS email approving 230 & 290 rtns at TMFL facilities.  1/23/20  le Ask TM if she wants me to follow up w/KS.  1/27/20  le TM indicated  I should contact KS re 230 & 290  rtns. Emailed  KS asking about both 230 & 290  rtns.  2/5/20  le KS emailed  230 rtn is at SLST-Walnut clinic & 290  rtn is at SLST-Morro Bay clinic.  Emailed KS thx.  Drafted & mailed  conf ltr.  2/5/20  le TM's blanket email sent to KS indicating rtn is delayed to Fall term (August 2020) due to COVID-19  events & SJC Administration's decision to not release students for rtn in order to start on time.  Rqst made for clin partner to extend another opportunity to student.  5/14/20  le KS emailed  thx asking for more clarification  re delay in rtns.  Fwdd to TM.  5/14/20  le | Email sent 11-5-19  tm to Bella Vista Email resent with another email  1-31-20

**Mission View Health Center (Compass Health)**    OP 1425 Woodside Drive San Luis Obispo, CA 93401    (805) 543-0210 (T-Have contract. 8/8/19 le)

**San Luis Transitional Care Cntr (Compass Health)** IP 1575 Bishop Street San Luis Obispo, CA 93401    (805) 545-7575 Jeff Clayton, Director    jeff@compass-health.com Jean Demeo, Primary PT    cell (310) 617-6942    jeandemeo@hotmail.com (LE added this 3rd option. Have contract. 7/3/19 le) Email sent to San Luis Jeff and Jean 10-28-19  tm Email sent to Jean and Jeff 10-29-19  tm | TM fwdd KS email string 11/18/19 w/TMFL Ap. KS needs TA's completed Ap ASAP for PTAP 290.  Emailed  TA thru CANVAS to complete & rtn ap to KS ASAP. Possible lctns:  Morro Bay, Arroyo G. & San Luis.  TM indicated PTAP 290 rtn needed as well.  11/20/19  le Waiting for KS email approving 230 & 290 rtns at TMFL facilities.  1/23/20  le Ask TM if she wants me to follow up w/KS.  1/27/20  le TM indicated I should contact KS re 230 & 290  rtns. Emailed  KS asking about both 230 & 290  rtns.  2/5/20  le KS emailed  230 rtn is at SLST-Walnut clinic & 290  rtn is at SLST-Morro Bay clinic.  Emailed KS thx.  Drafted & mailed  conf ltr.  2/5/20  le |

Updated 5/27/2020  12:07 PM

| **STUDENT** | | |
|---|---|---|
| TA has not submitted CSSF or Pledge as of 6/24/19. Emailed  TA thru Canvas that Dr. T has made his forms due by Monday, 7/1/19, Noon.  6/24/19  le Rcvd TA's CSSF 7/2/19.  Still need Pledge.  Entered into grid.  7/2/19  le TA submitted Pledge.  7/24/19  le | | |
| Type of Rotation:    OP | Type of Rotation:    IP | Type of Rotation:    OP |
| Contract in effect:    3/11/19 | Contract in effect: | Contract in effect:    3/11/19 |
| Confirm Ltr w/firm dates sent:    2/5/20 | Confirm Ltr w/firm dates sent: | Confirm Ltr w/firm dates sent:    2/5/20 |
| Handbook sent: | Handbook sent: | Handbook sent: |
| Special Requirements Checked: | Special Requirements Checked: | Special Requirements Checked: |
| Rotation postcard sent: | Rotation postcard sent: | Rotation postcard sent: |

Updated 5/27/2020  12:07 PM

## PJ HEATH

| PTAP 230 | PTAP 270 | PTAP 290 |
|---|---|---|
| Rtn cancelled due to COVID-19 & no release from SJC Administration. Rtns delayed to Aug 2020. | | |
| **PTAP 230** | **PTAP 270** | **PTAP 290** |
| 4 Week Rotation | 7 Week Rotation | 7 Week Rotation |
| May 25-June 19, 2020 | August 24-October 9, 2020 | October 12-November 27, 2020 |
| San Luis Sports Therapy    OP 7325 El Camino Real Atascadero, CA 93422    (805) 466-6719 Kallie Slette, PT, DPT, SCCE    (805) 788-0805 X262 Student Program Mgr   kallie.slette@slsportstherapy.com M4L-education@movementforlife.com Daniel McPherson (CI) | Vineyard Hills Health Center (Compass Health)  IP 290 Heather Court   (Rtn Lctn) Templeton, CA 93465    (805) 434-3035 Danny Taylor, PT (CI) –   All communications to Danny rehab_wnrc@vineyardhillshealth.com

**Compass Health**    IP CA Jeff Clayton, Dir of Rehab    jeffl@compass-health.com (PJH sent this option. 8/1/19 le) | San Luis Sports Therapy    OP 1414 Park Street Paso Robles, CA  93446    (805) 226-0975 Kallie Slette, PT, DPT, SCCE    (805) 788-0805  x262 Student Program Mgr   kallie.slette@slsportstherapy.com M4L-education@movementforlife.com Jennifer Seay (CI) |
| Email sent to KS for Jessica, PJ & Tyler 11-14-19  all 3 dts TM fwdd KS email string 11/18/19  w/TMFL Ap.  KS needs PJH's completed Ap ASAP for PTAP 230.  Emailed PJH thru CANVAS  to complete & rtn ap to KS ASAP. Possible lctns:  Atascadero, San Luis, & Paso Robles.  TM indicated PTAP 290 rtn needed as well.  11/20/19 le PJ emailed  11/25/19 indicating he would complete & send to KS this wk & asked if he needs to do same for PTAP 290 rtn.  I indicated yes but to do the PTAP 230 rtn ap first & right away.  11/26/19 le PJ emailed he sent ap to KS & KS indicated ap should have both 230 & 290  dts.  PJ's approved for 290 dts & just waiting for final approval from Dir for 230.  12/5/19 le Ask TM if she wants me to follow up w/KS.  1/27/20  le TM indicated I should contact KS re 230 & 290  rtns. Emailed  KS asking about both 230 & 290  rtns.  2/5/20 le KS emailed  230 rtn is at SLST-Atascadero clinic (Danile McPherson will be CI) & 290 rtn is at SLST-Paso Robles clinic (Jennifer Seay will be CI).  Emailed  KS thx. Drafted & mailed conf ltr.  2/6/20 le TM's blanket email sent to KS indicating rtn is delayed to Fall term (August) 2020) due to COVID-19  events & SJC Administration's decision to not release students for rtn in | Email sent to Jean and Jeff 10-28-19  tm Email sent to compass Jeff C 11-5-19  tm Jeff confirmed 11-6-19 tm TM fwdd email string w/JC.  Emailed  TM asking if I should complete conf ltr for 8/24-10/9/20?  11/21/19  le TM emailed conf ltr for 270 rtn.  Drafted & sent conf ltr to JC via email & regular mail w/lctn to come.  Need lctn of rtn.  11/22/19  le JC emailed  that PJ will complete rtn at Vineyard Hills Health Center with Danny Taylor, PT, as CI.  Included info above in grid.  Fwdd to TM for fyi.  Emailed  JC thx. 1/30/20 le

**San Luis Transitional Care Cntr (Compass Health)** IP 1575 Bishop Street San Luis Obispo, CA  93401    (805) 545-7575 Jeff Clayton, Dir of Rehab    jeffl@compass-health.com Jean Demco, Primary PT    cell (310) 617-6942 jeandemco@hotmail.com (LE added this 3rd option.  Have contract.  7/3/19 le) | TM fwdd KS email string 11/18/19  w/TMFL Ap.  KS needs PJH's completed Ap ASAP for PTAP 290. Emailed  PJH thru CANVAS  to complete & rtn ap to KS ASAP.  Possible lctns:  Atascadero, San Luis, & Paso Robles.  TM indicated PTAP 290 rtn needed as well. 11/20/19 le PJ emailed  he sent ap to KS & KS indicated ap should have both 230 & 290  dts.  PJ's approved for 290 dts & just waiting for fnl approval from Dir for 230.  12/5/19 le TM indicated I should contact KS re 230 & 290  rtns. Emailed  KS asking about both 230 & 290  rtns.  2/5/20 le KS emailed  230 rtn is at SLST-Atascadero clinic (Danile McPherson will be CI) & 290 rtn is at SLST-Paso Robles clinic (Jennifer Seay will be CI).  Emailed  KS thx. Drafted & mailed conf ltr.  2/6/20 le |

Updated 5/27/2020  12:07 PM

| | | |
|---|---|---|
| order to start on time.  Rqst made for clin partner to extend another opportunity to student.  5/14/20 le KS emailed  thx asking for more clarification re delay in rtns.  Fwdd to TM  5/14/20 le

**STUDENT** PJ has not submitted CSSF or Pledge as of 6/24/19. Emailed  PJ thru Canvas that Dr. T has made his forms due by Monday, 7/1/19, Noon.  6/24/19 le TM asked me to call PJH for forms.   Left PJ vm.  7/3/19 le PJ submitted CSSF & Pledge.  Entered into grid.  Second rtn selections for IP to come soon.  7/5/19 le PJ submitted 2nd rtn sels.  Entered into grid.  8/1/19 le | | |
| **Type of Rotation:**    OP Contract in effect:    3/11/19 Confirm Ltr w/firm dates sent:    2/6/20 Handbook sent:    ____ Special Requirements Checked:    ____ Rotation postcard sent:    ____ | **Type of Rotation:**    IP Contract in effect:    10/9/18 Confirm Ltr w/firm dates sent:    11/22/19 Handbook sent:    ____ Special Requirements Checked:    ____ Rotation postcard sent:    ____ | **Type of Rotation:**    OP Contract in effect:    3/11/19 Confirm Ltr w/firm dates sent:    2/6/20 Handbook sent:    ____ Special Requirements Checked:    ____ Rotation postcard sent:    ____ |

Updated 5/27/2020  12:07 PM

# Exhibit 11

Mr. Pitts stated that no one else but Dr. Millis and himself were present during any of the communications regarding the denial of his choice of the clinical site. He was not aware if anyone had overheard the conversation between himself and Dr. Millis.

Mr. Pitts stated he had a phone conversation with Ms. Lacey during the Spring semester 2020 to discuss an assignment. During this conversation, Ms. Lacey asked why he had such limited time. Mr. Pitts informed Ms. Lacey that he was working long hours and was interviewing in search of gainful employment. He explained that he had interviewed with a sports team recently and had worked for multiple sports teams in the past. Mr. Pitts also shared that he had been upfront with the team representative regarding the PTA Program and upcoming clinical rotations and how much of a deterrent during the interview and hiring process. Mr. Pitts stated that Ms. Lacey's solution was to "drop out of the program and restart later." Mr. Pitts stated this was not helpful seeing that Almeida and Heath were scheduled to complete their rotations with their employer. Mr. Pitts hoped that Ms. Lacey might provide a solution to completing the program while working for an employer.

Mr. Pitts stated that he provided his choice, Assessment Technologies Physical Therapy, Inc. (ATI) for clinical rotation to Lisa Easley through email on May 9, 2019, and spoke with Dr. Millis by phone thereafter. He stated that he did not work for them. Dr. Millis responded by phone. The discussion regarding ATI came by way of another occasion where Dr. Millis asked if he had worked for or was currently working for ATI Physical Therapy after Mr. Pitts requested that Dr. Millis contact ATI for rotations. He stated that Dr. Millis began to tell him about the program policy and how it forbids rotations with previous and current employers. Mr. Pitts shared with Dr. Millis that ATI Physical Therapy has many clinics in the Boston area, and hoped to possibly perform multiple rotations with the company. Mr. Pitts stated that Dr. Millis then began quoting the PTA Program policy that forbids rotations with previous or current employers, even if done at different sites, just as she had previously in regard to Alliance Physical Therapy. Mr. Pitts stated that Dr. Millis pretty much said over the phone, "I'll have to consider it" and she never set it (ATI) up. Mr. Pitts stated, "In my mind, that's a denial."

Mr. Pitts stated that when Dr. Cooper and Ms. Lisa Easley tried to set up Mr. Pitts' clinical rotation, the clinical rotation site indicated they were cancelling clinical rotations because of COVID-19." On June 9, 2020, Dr. Millis sent out an email changing the policy. Mr. Pitts said he received notification from Dr. Millis on the same day that his rotations were set up.

Mr. Pitts said he was notified by Dr. Cooper and Ms. Lisa Easley that his first rotation was set and they were working on the second rotation with Mass General Hospital (MGH) and it was in the works to confirm. Mr. Pitts stated that Dr. Millis had sent him an email saying that MGH was already set up and had nothing else to say, everything was fine. Mr. Pitts stated he had Dr. Cooper and Ms. Lisa Easley double-check the placement and they responded that MGH has not committed to having him as a student. Mr. Pitts said he had asked Dr. Cooper specifically, "have you checked with other sites that I have requested." At that point, Mr. Pitts stated he had already checked with a representative at Worchester Physical Therapy Services. He spoke with the representative a week or so prior to sending the message to Dr. Cooper to double-check my sites. The individual said that he had not heard from San Juan College. The Worchester representative said it was the first time, talking to Mr. Pitts, that anyone had mentioned San Juan College. Mr. Pitts states that the individual checked all his emails from that day and said there is nothing here from San Juan College. Mr. Pitts states that Worchester later received a message from Dr. Cooper about the selection sites. She said that they reached out to Worchester Physical Therapy a while back but have not heard back from them. Mr. Pitts stated that he knows that was not true because he spoke to the representative about a week or two before prior to the message

# Exhibit 12

DM-1116-CV-2020-00888 — Courtroom 2

| Time | Text |
|---|---|
| 2:12:02 PM | DR MAKES ARGUMENT IN HER RESPONSE THEY ARE BESIDE THE POINT WE NEED TO STICK TO RULE 76 |
| 2:12:18 PM | DR MAKES TWO POINTS AND FIRST ONE IS COMMUNITY COLLEGE ARE POLITICAL SUBDIVISIONS OF THE STATE |
| 2:12:21 PM | SHE STATES COUNTIES AND MUNICIPALITIES ARE SUBDIVISION AND APPLIES TO RULE 76 SINCE COLLEGES ARE POLITICAL SUBDIVISIONS |
| 2:12:38 PM | THIS IS INCORRECT AND IRRELEVANT |
| 2:12:54 PM | RULE 76 DOES NOT SAY FOR PURPOSE OF THIS RULE COMMUNITY |
| 2:13:02 PM | MEANING POLITICAL SUBDIVISION OF THE STATE COUNTIES AND MUNICIPALITIES ARE POLITICAL SUBDIVISION OF THE STATE AND LOCAL GOVERNMENT ENTITIES AND SUBJECT TO RULE 76 |
| 2:13:16 PM | DEFINE AGENCY DOES NOT INCLUDE THE TERMS |
| 2:13:41 PM | SECOND ARGUMENT IS COLLEGE ACTS IN QUASI JUDICIAL CAPACITY WHEN IT TERMINATED A 10 YEAR PUBLIC EMPLOYEE |
| 2:13:37 PM | THIS ARGUMENT IS INCORRECT |
| 2:13:40 PM | ANY ENTITY ANY AGENCY CAN ACT AS A QUASI JUDICIAL CAPACITY |
| 2:13:51 PM | TO ACT IN QUASI ENTITY IS TO NOT BE IN A QUASI JUDICIAL ENTITY PER RULE 76 PRIVATE EMPLOYERS CAN ACT QUASI JUDICIAL |
| 2:14:05 PM | DR WAS TERMINATED AND CONTRACT WAS NOT RENEWED AFTER EFFORTS TO WORK WITH HER ON PERFORMANCE |
| 2:14:19 PM | EMPLOYMENT WAS BASED ON TERMS OF CONTRACT |
| 2:14:23 PM | DR WAS NOT 10 TEN YEAR THERE IS NO TEN YEAR AT SJC AND COMMUNITY COLLEGES ARE SEPARATE AND APART FROM EDUCATION SYSTEMS |
| 2:14:37 PM | COMMUNITY COLLEGES ARE NOT LIKE UNM UNIVERSITIES |
| 2:14:57 PM | AGENCY IS DEFINED BY THIS RULE |
| 2:15:06 PM | COURT NEEDS TO READ RULE 76 AND DETERMINE IF SJC AS AN SAN JUAN COLLEGE IS TO DECIDE IF DISTRICT COURTS CAN EXERCISE APPELLATE JURISDICTION OVER DECISION COMMUNITY COLLEGES NOT JUST EMPLOYMENT RELATED ONES |
| 2:15:24 PM | THERE IS NO CASE OR RULE LAW THAT SAY RULE 76 APPLIES TO COMM COLLEGES |
| 2:15:35 PM | OR DISTRICT COURT SHOULD BEGIN REVIEWING AS APPELLANT BODIES ANY DECISION MADE BY COMM COLLEGES |
| 2:15:50 PM | THERE ARE TWO POINTS MADE AND ALSO UNION CANNOT BE A PARTY TO THIS APPEAL |
| 2:16:04 PM | THIS IS LISTED IN PETITIONER AS IS DR MILLS AND DOES NOT HAVE A BY NAME |
| 2:16:12 PM | (GIVES EXAMPLE OF HOW THIS DOES NOT NAME BESIDE) YOU CAN ONLY BE A PARTY TO AN APPEAL IF YOU ARE A PARTY ALONE |

DM-1116-CV-2020-00888 — Courtroom 2

| Time | | Text |
|---|---|---|
| 2:05:21 PM | | CM AND LIZ THERE IS NO MATTER THAT DEALS WITH COLLEGE OF TRUSTEE |
| 2:05:58 PM | PLA | PARTIES ARE MUTED |
| 2:05:58 PM | | APOLOGIZE |
| 2:05:59 PM | R | YES JERRY WERTHEIM ON BEHALF OF PETITIONERS |
| 2:06:01 PM | R | SAMANTHA KELLY ON BEHALF OF RESPONDENTS |
| 2:11:22 PM | J | ANYONE ELSE |
| 2:11:27 PM | | WANT TO TALK OF DECORUM |
| 2:11:02 PM | | PLEASE MUTE YOUR MIC IF YOUR NOT TALKING |
| 2:11:13 PM | | AUDIO NEEDS TO BE ACCURATE |
| 2:11:23 PM | | YOUR COOPERATION IS GREATLY APPRECIATED |
| 2:11:24 PM | R | ANY RESPONDENT'S ON LINE WHO ARE NOT REPRESENTED BY COUNSEL |
| 2:11:42 PM | | (NO RESPONSE) |
| 2:11:45 PM | PLA | AGREE |
| 2:11:52 PM | | SET TODAY FOR RESPONDENT'S MOTION TO DISMISS |
| 2:03:41 PM | R | COUNSEL FOR DEFENDANT WILL BE ARGUING THE MOTION |
| 2:04:19 PM | | PLA NO PRELIMINARY MATTERS |
| 2:04:54 PM | R | NONE |
| 2:05:01 PM | J | VERY FAINT AND MAY NEED TO SIT CLOSER |
| 2:05:38 PM | | WILL SPEAK LOUDLY |
| 2:05:49 PM | | HERE DUE TO PETITION FOR FIDUCIARY FILED BY PETITIONER |
| 2:05:49 PM | | DR ASK TO EXERCISE APPEAL JURISDICTION |
| 2:05:10 PM | | COLLEGE HAS MOVED TO DISMISS PETITIONER DUE TO RULE 76 DOES NOT APPLY TO COMMUNITY COLLEGE |
| 2:06:13 PM | | WILL GIVE BRIEF BACKGROUND |
| 2:05:50 PM | | COLLEGE HAS RENEWED CONTRACT ABOUT DR'S PERFORMANCE DR PARTICIPATED IN GROWTH PLAN |
| 2:05:28 PM | | DR WAS NOT 10 YEAR CONTRACT SHE PURELY ENDED EVERY YEAR |
| 2:05:57 PM | | THIS PROCESS PROVED UNSUCCESSFUL |
| 2:05:35 PM | | THE COLLEGE DECIDED NOT TO RENEW CONTRACT AND THIS HAS BEEN APPEALED TO COURT |
| 2:05:36 PM | | MAY ASK WHAT IS RULE 76 |
| 2:05:44 PM | | THIS IS NOT WRONG BUT THE AMPLE FOR THESE TYPES OF CLAIM AND BEING BROUGHT AT WRONG TIME |
| 2:05:53 PM | | THIS IS AN INCOMPLETE CAPACITY |
| 2:05:54 PM | | DR SUBMITTED CHARGE OF DISCRIMINATION WITH HR AND EEOC |

# Exhibit 13

evidence in the Record overwhelmingly supports the College's position that Dr. Millis performed poorly in the Director position, she was the subject of numerous complaints, and she failed to improve her performance after being given ample time and specific instruction from her supervisor. There is no constitutional principle that would require an employer who is faced with such a situation to demote a poorly performing employee instead of non-renewing the individual's contract, and the Petitioners have failed to cite any authority that supports their argument. As such, Petitioners' argument that the College was required to inform Dr. Millis of her deficiencies as to each aspect of her employment (including as both the Director of the PTA Program *and* as an Associate Professor) before being able to satisfy due process, simply lacks both merit and supportive legal authority.

Further, there is no requirement in the Handbook that an employee be demoted. Dr. Forgette discussed this issue during the hearing. [AR 6/17/2020 2:33:29-2:34:22] She explained that the Employee Handbook neither provides this approach as an option, nor expressly forbids it [AR 6/17/2020 2:34:08-22]. Dr. Forgette's testimony shows that the College considered this as an option for Dr. Millis, even though her position at the College and her salary based upon that position did not provide for a demotion to an Associate Professor position. [AR 6/17/2020 2:33:33-2:34:20].

Petitioners also claim that Dr. Millis' opportunity to improve was not fair because "the College referred only to Section 4.18(4) of the Employee Handbook." [SRI at 5]. Petitioners argue the College should have also cited Section 8.05 of the Employee Handbook because, purportedly, the College "failed to notify" the hearing panel that termination was not required." [SRI at 6]. First, this is—again—not born out by the record. The panel listened to argument and discussions on Section 8.05 numerous times during the hearing. In fact, Dr. Millis' representative asked almost

10

every single one of the College's witnesses about this provision of the Employee Handbook. [AR 6/17/2020 2:7:40-2:8:33 (Ms. Allen); 1:43:40-55 (Dean Passero); 2:20:08-27 (Dr. Forgette)]. The panel had knowledge of this provision of the Employee Handbook, and Dr. Forgette explained the College's consideration of retaining Dr. Millis as an Associate Professor only as opposed to contract non-renewal. However, the College had received numerous complaints about Dr. Millis from students in the Program, and relayed Dr. Millis' shortcomings to her during the GP process. Nonetheless, Dr. Millis failed to improve.

To the extent Petitioners complain that Section 8.05 was not provided to the panel (see SRI at 6 ("Section 8.05, about performance improvement plans, was cited during the hearing but not provided to the Hearing Panel for review")) it was the responsibility of Dr. Millis to include it within her list of documents to be provided to them. [Record 00262 (listing Dr. Millis' documents she intended for use or referral during hearing)]. Its absence constitutes Petitioners' failure to preserve the issue. *See* Rule 1-075(K)(2) NMRA (requiring Statement of Review Issues to include citation to the record "showing how the issues were preserved").

Finally, Petitioners point to the language used by the hearing panel in its recommendation to San Juan College Administration as proof that Dr. Millis' opportunity to improve was not fair. [SRI at 4-5]. Petitioner's reliance on such language is misplaced and simply does not support the argument that Dr. Millis' constitutional rights were violated. First, the Record is clear that the panel voted to uphold the non-renewal of Dr. Millis' contract. [Record 00323-24]. There is no support in the Record that the panel did so because it was confused as to its role or as a result of a failure to understand and consider the circumstances that led to the non-renewal. Further, there is no support for the argument that the panel felt that the GP was unfair or that Dr. Millis was not given an opportunity to improve. If this was the case, the panel had a plain and speedy method at

11

# Exhibit 14

 Gmail

Kenneth Pitts <pittsk80@gmail.com>

## Fw: Appeal Hearing Meeting Notification
1 message

**Kenneth A. Pitts** <kapitts94@my.sanjuancollege.edu>          Tue, Sep 15, 2020 at 8:23 AM
To: Kenneth Pitts <pittsk80@gmail.com>

**From:** Boomer Appleman, Dr. <applemanb@sanjuancollege.edu>
**Sent:** Monday, September 14, 2020 11:35 PM
**To:** Kenneth A. Pitts <kapitts94@my.sanjuancollege.edu>
**Cc:** Stacey Allen <allens@sanjuancollege.edu>
**Subject:** Appeal Hearing Meeting Notification

Good evening, Mr. Pitts:

As a result of our conversation, today, I want to provide you the time and date of your appeal hearing in a timely manner. Your requested appeal hearing has been has been scheduled for 10:30am MT, Thursday, September 17th. The hearing will be held via Zoom and you will receive a meeting request notification with the link to your San Juan College email address.

During our conversation, you indicated several questions regarding the hearing body, procedural and material considerations. This information will be provided to you via email by end of day, Tuesday, September 15th.

Respectfully,

Boomer W. Appleman, EdD
Vice President for Student Services
San Juan College
4601 College Blvd.
Farmington, NM 87402
Ph:505.566.3400


SAN JUAN COLLEGE
Success Matters

EXHIBIT B

c. will then meet with the EEO/Title IX/Section 504 Coordinator to describe and discuss the reasons for the complaint, the related circumstances, and the desired resolution. To assist in timely resolutions, students should attempt to begin the procedures as soon as possible after the incident. Students will be asked to sign a form documenting their own versions.

c. The EEO/Title IX/Section 504 Coordinator is under obligation by law to investigate any charges of discrimination or unfair treatment. Upon receipt of the complaint, the EEO/Title IX/Section 504 Coordinator will conduct a thorough and impartial investigation after obtaining a written consent to the investigation from the complaining student (or the parent if under the age of 18). A thorough and impartial investigation includes, but is not limited to, interviewing and obtaining statements from involved parties, witnesses and other persons with knowledge, obtaining relevant documentation or other evidence, seeking guidance from Federal guidebooks and manuals and seeking advice, if appropriate, from College counsel. It also includes advising involved parties of the right to present witnesses and evidence at an appeal hearing.

d. After thorough investigation, the EEO/Title IX/Section 504 Coordinator will attempt to facilitate informal conferences and negotiations, toward a mutually satisfactory resolution.

c. If a complaint cannot be resolved informally, the EEO/Title IX/Section 504 Coordinator or the Office of the Vice President for Student Services will make a determination within thirty (30) College work days from the date the complaint was received.

f. San Juan College will use a preponderance of the evidence standard in all determination proceedings involving discrimination including, but not limited to sexual violence or sexual misconduct including sexual harassment. This means that the standard of proof is whether the evidence presented makes it "more likely than not" that the alleged misconduct occurred.

g. The decision of the EEO/Title IX/Section 504 Coordinator will be made in writing and given to both the complaining and responding party as well as the Vice President for Student Services. The complaining and responding party will only be notified of any sanctions imposed on the responding party if they relate to the complaining student.

h. If it is determined that there was a hostile environment or an environment that allowed sexual violence to take place, the EEO/Title IX/Section 504 Coordinator and the Vice President for Student Services will take immediate action to eliminate the hostile environment to prevent its reoccurrence and address its effects.

3. Appeal Process for Students.

a. Any party who is dissatisfied with the determination has the right to file an appeal within fifteen (15) working days of notification of the decision. A written notice of appeal must be filed by the aggrieved party with the Office of the Vice President of Student Services.

b. The Vice President of Student Services has ten (10) working days from receipt of the signed notice of appeal to schedule in a timely manner an appeals panel to hear the matter. The appeal will be considered do novo by the appeal panel, which shall not be bound by the discrimination made by the EEO/Title IX/Section 504 Coordinator.

c. Upon receipt of the written notice of appeal, the Vice President for Student Services for his/her designee will appoint an appeal panel composed of six (6) people and a chairperson. The membership of the Committee will include:

(i) Two (2) faculty members (outside the department of the alleged discrimination occurrence);

(ii) Two (2) professional staff members (outside the department of the alleged discrimination occurrence);

(iii) Two (2) students; and

---

EXHIBIT B

(iv) Representative staff member from Human Resource Office other than the EEO/Title IX/Section 504 Coordinator or their designee.

d. The Vice President will mail a notification of the formal appeal hearing to all individuals involved, within ten (10) working days after the receipt of the written notice of appeal.

e. The appeal panel will provide all involved individuals an opportunity to present relevant evidence and witnesses and present arguments and the hearing will comply with due process requirements. Cross examination of the reporting party or responding party will be done by written questions submitted to the Vice President for Student Services after a short break in the hearing may have an advisor to consult and support them. The Parties at the appeal hearing may have an advisor for a hostile environment. Advisors may not speak at in the hearing, may not address the panel, or question witnesses. Advisors who are disruptive or fail to follow these rules will be removed. Specific guidelines for the appeal hearing are located in the Student Handbook.

f. The appeal panel will determine the outcome of the appeal based on all information presented at the appeal hearing and will use the preponderance of evidence standard. The outcome of the appeal will be determined by majority vote of the participating appeal panel participants.

g. The written decision of the appeal panel will be given to the individuals involved, the EEO/Title IX/Section 504 Coordinator and the Vice President for Student Services, within five (5) working days following the completion of the appeal hearing. The reporting party will only be notified of any sanctions imposed on the responding party if the sanction directly relates to the complaining student.

h. Any decision of the appeal panel may be appealed to the President within ten (10) working days following the hearing by delivering a written notice of appeal to the Office of the President. Upon receipt of the appeal, the President will review the decision based on the record presented within thirty (30) working days. There will be no appearance or oral argument presented to the President. The decision of the President is final and non-appealable.

i. Records of the appeal hearing will be kept in the Office of the Vice President for Student Services and the EEO/Title IX/Section 504 Coordinator.

j. All students are notified that they also have a right to file complaints with the appropriate state, federal, regional or national agency, if they choose, including filing complaint with local law enforcement for sexual violence complaints.

k. Penalties: Cases for students who are found to have violated the San Juan College Student Code of Conduct will be referred to the Vice President of Student Services. Sanctions for students may include any of the actions listed in Applicability and Sanctions Section J above.

L. General Information:

1. Supervisors: If anyone in a supervisory, managerial, administrative or executive role or position, such as a supervisor, dean, director of a unit, receives a complaint of alleged discrimination or sexual harassment, or observes or becomes aware of conduct that may constitute discrimination or sexual harassment, that person must immediately contact the EEO/Title IX/Section 504 Coordinator.

2. Employees: An employee who believes that he or she has been subjected to discrimination or sexual harassment by anyone is encouraged, but it is not required, particularly if it may be confrontational, to promptly tell the person that the conduct is unwelcome and ask the person to stop the conduct. An employee is not required to do this before filing a complaint. A person who

# Exhibit 15

4/2/25, 8:31 PM                                                                 Gmail - Follow Up Question

**Mathews, David, NMHED** <David.Mathews@state.nm.us>                                Mon, Aug 16, 2021 at 12:42 PM
To: Kenneth Pitts <pitsk60@gmail.com>, "Armijo, Alicia, NMHED" <Alicia.Armijo@state.nm.us>

Mr. Pitts-I have requested your Canvas notes from San Juan College.



**David Mathews**
General Counsel
2044 Galisteo Street, Suite 4, Santa Fe, NM 87505
David.Mathews@state.nm.us
(505) 469-2395
Follow @NMHigherEd on Twitter, Facebook, & Instagram
Sign up for your free COVID-19 vaccine today
at VaccineNM.org!

From: Kenneth Pitts <pitsk60@gmail.com>
Sent: Monday, August 9, 2021 12:53 PM
To: Mathews, David, NMHED <David.Mathews@state.nm.us>; Armijo, Alicia, NMHED <Alicia.Armijo@state.nm.us>
Subject: Re: Follow Up Question

Hello Mr. Mathews and Ms. Armijo.

I hope all is well with you both. I'm contacting you to ask for an update as to when I might hear from you.

I wonder if it would be possible for the NMHED to have the College give me access to my Canvas notes while I wait for your response?

The College has claimed that the notes cannot be accessed  because they would have to do so for everyone. So then, the SJC PTA Program currently has classes and students who are taking the very same courses I was enrolled in (PTAP 210 and 250) and the courses I had completed prior to my June 9, 2020 complaint.

Also, I wonder if it would be possible for the NMHED to have the College give me access to my Canvas notes just as they have for the current students.

That said, the College is denying me yet again Public Accommodation, which is access to the course notes just as they have for the current students.

https://mail.google.com/mail/u/0/?ik=01d27b9e0&view=pt&search=all&permthid=thread-k+4264238156672651826&simpl=msg-a-r9147849748124&...   5/42

---

4/2/25, 8:31 PM                                                                 Gmail - Follow Up Question

**Mathews, David, NMHED** <David.Mathews@state.nm.us>                                Mon, Aug 9, 2021 at 2:53 PM
To: Kenneth Pitts <pitsk60@gmail.com>

"Mathews, David, NMHED" <David.Mathews@state.nm.us>", "Armijo, Alicia, NMHED" <alicia.armijo@state.nm.us>



image002.jpg
1K

image001.png
28K

Hello Mr. Mathews and Ms. Armijo.

Also, I wonder if it would be possible for the NMHED to ask for an update as to when I might hear from you.

I hope all is well with you both. I'm contacting you to ask for an update as to when I might hear from you.

The College has claimed that the notes cannot be accessed  because they would have to do so for everyone. So then, the SJC PTA Program currently has classes and students who are taking the very same courses I was enrolled in (PTAP 210 and 250) and the courses I had completed prior to my June 9, 2020 complaint.

That said, the College is denying me yet again Public Accommodation, which is access to the course notes just as they have for the current students.

Finally, I also would like to know if this occurrence has been reported to NC SARA as stated by Ms. Armijo during our July 26, 2021 phone meeting? If so, what has been reported and may I have a copy of that report please? If not, when will it be reported and what will the report include?

Thanks for your time,
Kenneth Pitts, SPTA
SJC SID# 1025177
214.840.9232

[Quoted text hidden]

https://mail.google.com/mail/u/0/?ik=01d27b9e0&view=pt&search=all&permthid=thread-k+4264238156672651826&simpl=msg-a-r9147849748124&...   4/42

4/2/25, 8:31 PM                                                                 Gmail - Follow Up Question

Finally, I also would like to know if this occurrence has been reported to NC SARA as stated by Ms. Armijo during our July 26, 2021 phone meeting? If so, what has been reported and may I have a copy of that report please? If not, when will it be reported and what will the report include?

Thanks for your time,

Kenneth Pitts, SPTA
SJC SID# 0261717
614.940.9232

On Tue, Aug 3, 2021, 9:22 AM Kenneth Pitts <cpitsk80@gmail.com> wrote:

Hello Mr. Mathews and Ms. Armijo,

I hope you're having a wonderful week. Yes, I like the idea of you being the contact for my grader. I look forward to hearing from you when you have the time.

Enjoy your day,

Kenneth Pitts, SPTA
SJC SID# 0261717
614.940.9232

[Quoted text hidden]

On Thu, Jul 29, 2021, 3:06 PM Mathews, David, NMHED <David.Mathews@state.nm.us> wrote:

Mr. Pitts-I understand your concern about SJC contacting the grader(s). I can be the contact.

Both Alicia and I have a very busy afternoon and I'll get a more detailed answer to you when I can do so. I did want you to know I had received your emailed concerns and will devote more attention to them when I'm free.

David Mathews

[Quoted text hidden]
[Quoted text hidden]
[Quoted text hidden]

---

4/2/25, 8:31 PM                                                                 Gmail - Follow Up Question

**David Mathews**
General Counsel

**2044 Galisteo Street, Suite 4, Santa Fe, NM 87505**

David.Mathews@state.nm.us
(505) 469-2395

Follow @NMHigherEd on Twitter, Facebook, & Instagram

Sign up for your free COVID-19 vaccine today at VaccineNM.org!

[Quoted text hidden]

Kenneth Pitts <cpitsk80@gmail.com>                                          Fri, Aug 20, 2021 at 1:06 PM
To: Kenneth Pitts <cpitsk80@gmail.com>

Hi Mr. Pitts-San Juan College has responded to my inquiry regarding Canvas notes. SJC reports that if you are seeking the course content that was maintained in the SJC Canvas system, that content is not available as those courses have been closed.

[Quoted text hidden]

Kenneth Pitts <cpitsk80@gmail.com>                                          Tue, Aug 24, 2021 at 10:27 PM
To: "Mathews, David, NMHED" <David.Mathews@state.nm.us>
Cc: "Armijo, Alicia, NMHED" <alicia.armijo@state.nm.us>

Hello Mr. Mathews and Ms. Armijo,

I hope you're having a wonderful week. I appreciate you checking with the College regarding my Canvas notes question. The previous courses may be closed, but PTAP 210 / 250 have just begun this semester and have attached screenshots of the course information for each. I would like access to the Canvas notes for these courses please?

Also, while I know that both of you are very busy with many things, I ask that you provide me with an update as to when I might be permitted to complete my Skills Checks and Lab Practicals in the previously requested format?

It is due the fact that the delay is causing me to miss out on some great employment opportunities.

With all due respect, I must ask that you update me please. Also, I am still awaiting your response on previously asked questions such as:
- What has been or will be reported to NC SARA? When may I receive a copy of the report?

As always, feel free to contact me via phone with questions or comments regarding my request for information.

Respectfully,
Kenneth Pitts, SPTA
SJC SID# 0261717
614.940.9232

[Quoted text hidden]

4 attachments

Screenshot_20210824-220551, Samsung Internet.jpg
458K

Screenshot_20210824-220718, Samsung Internet.jpg
535K



NEW MEXICO
HIGHER EDUCATION
DEPARTMENT

image001.png
28K



NEW MEXICO
HIGHER EDUCATION
DEPARTMENT

image001.png
28K

Mathews, David, NMHED <David.Mathews@state.nm.us>
Wed, Aug 25, 2021 at 7:30 AM
"Armijo, Alicia, NMHED" <Alicia.Armijo@state.nm.us>
Kenneth Pitts <pitts480@gmail.com>

Mr. Pitts-I will check with SJC this morning. I've got legislative meetings beginning at 10 am, but will watch my emails
as... I'm able.

[Quoted text hidden]

Armijo, Alicia, NMHED <Alicia.Armijo@state.nm.us>
Wed, Aug 25, 2021 at 10:08 AM
Kenneth Pitts <pitts480@gmail.com>, "Mathews, David, NMHED" <David.Mathews@state.nm.us>

Good morning Mr. Pitts,