**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

KENNETH PITTS,

      Plaintiff,

vs.                                                                                 No. 1:23-cv-00120-WJ-SCY

SAN JUAN COLLEGE,

      Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

THIS MATTER is before the Court on the Defendant San Juan College's Partial Motion to Dismiss **[Doc. 55]**, Defendant San Juan College's Motion to Dismiss on Plaintiff's Claims for Alleged Violation of 42 U.S.C. Section 2000(d) **[Doc. 77]**, and Defendant San Juan College's Motion for Summary Judgment on Plaintiff's Claims for Alleged Violation of 42 U.S.C. Section 2000(d) **[Doc. 94]**.  The Court, having considered the motions, memoranda in support, responses and oppositions, and replies, construes the motions collectively as a request for summary judgment pursuant to Fed. R. Civ. P. 12(d) and 56, and grants summary judgment.

**UNDISPUTED MATERIAL FACTS**

Plaintiff claims to dispute Defendant's statement of material facts by presenting his own statement of undisputed material facts.  **[Doc. 78 at 5-7]**.  However, in general Plaintiff's arguments regarding the facts are not supported as required by Fed. R. Civ. P. 56(c)(1) and, where Plaintiff has submitted evidence, it does not create a genuine issue of material fact.  Therefore, pursuant to Fed. R. Civ. P. 56(e)(2) the Court finds that the following facts are undisputed for purposes of Defendant's motions ("CUMF"):

1

1. San Juan College ("San Juan") is a public college located in Farmington, New Mexico. **[Doc. 1-2].**

2. From January 2019 through August 2020, Plaintiff Kenneth Pitts was enrolled as a student in San Juan's online hybrid Physical Therapy Assistant ("PTA") program containing both online and in-person components. **[Doc. 1-2; Doc. 80-2 at ¶ 2].**

3. The PTA Program combined classroom instruction, laboratory exercises, and clinical rotation externships to prepare students to be PTAs and to be eligible to take the national licensing examination. **[Doc. 80-2 at ¶ 3].**

4. Plaintiff alleges that he is "an African-American male who has experienced racial discrimination as a student [at San Juan]" **[Doc. 1-2 at 1].**

5. Plaintiff alleges that San Juan's then PTA Program director, Therese Millis, "denied [his] many requests for the same or similar clinical rotations situation as 2-3 non-minority students within the same cohort." **[Doc. 1, Sec. III].**

6. Plaintiff further alleges that, "after the firing of the primary discriminator [Theresa Millis]" San Juan "immediately switched to retaliatory acts." **[Doc. 1-2, at 1].**

7. The PTA Program is accredited by the Commission on Accreditation in Physical Therapy Education ("CAPTE"). **[Doc. 80-2 at ¶ 4].**

8. At the time of Mr. Pitts' enrollment, clinical externships were identified as PTAP-330, 270, and 290.  Before students were permitted to participate in clinical externships, they first had to complete lower-level pre-requisite courses to gain admission into the higher-level courses. **[Doc. 80-2 at ¶ 5].** Two pre-requisites were PTAP-210 and PTAP-250. Students had to complete and pass PTAP-210 and PTAP-250 to demonstrate fundamental knowledge/skills that would allow them to safely participate in PTAP-270 and PTAP-290. Similarly, online hybrid students, such as

2

Mr. Pitts, typically had to complete PTAP-250 as a co-requisite to PTAP-230, the first clinical externship. However, due to the COVID-19 pandemic, Mr. Pitts' cohort did not start PTAP-230 while they were enrolled in PTAP-250 in the Summer of 2020. **[Doc. 80-2 at ¶ 5].**

9. To set up a clinical externship for a student, San Juan works with third-party providers to obtain the providers' agreement to allow students to practice their skills at the third-party facilities under the supervision of a clinical instructor. **[Doc. 80-2 at ¶ 6].** The third-party providers must be willing to execute a contract with San Juan to accept San Juan's students. The contracting process can be slow and it is not unusual for issues to arise in the process. **[Doc. 80-2 at ¶ 6].**

10. One such issue that can arise in the contracting process is when a provider requests San Juan to indemnify the provider for any claim that may arise from a student's placement in an externship. Consistent with New Mexico state law, San Juan does not agree to indemnify providers. **[Doc. 80-2 at ¶ 6].**

11. Because the contracting and placement process with third-party providers can be time consuming, San Juan requires each PTA student to submit a list of their preferred third-party providers through a "Site Selection Form" well in advance of the students' completion of the prerequisites needed for the externships. **[Doc. 80-2 at ¶ 7].**

12. The Site Selection Form is submitted by each student and constitutes a student's official request to be placed with the third-party providers the student has identified. **[Doc. 80-2 at ¶7].** The PTA staff attempts to place each student with the providers identified on the form, giving preference to the student's first choice, then second, and so on. As the site Selection Form states, there are a variety of reasons why placement at a student's preferred providers may not be possible. Some considerations include whether the identified provider is not an appropriate

placement, whether the providers agree to contract with San Juan, and whether the providers have availability and capacity to accept the number of students who may have selected them for externships. If an agreement is reached between San Juan and the third-party provider, a student's externship is confirmed for a future semester, once the student has completed the mandatory pre-requisites. **[Doc. 80-2 at ¶7].**

13. The PTA Program's policy provided that students are not permitted to perform a clinical rotation externship at a "site" or facility where the student had worked in the past two years. The policy was given to PTA students and available on the PTA program website. **[Doc. 80-2 at ¶ 13].** The policy is also stated on the Site Selection Form. **[Doc. 80-2 at ¶¶ 13-14; Doc. 1-9 at 2** ("Additionally, you cannot select a site you are or have previously worked full time in the past two years.")**].** Students are, however, permitted to perform clinical externships with former employers, as long as their selected externship is at a different site than where they previously worked. **[Doc. 80-2 at ¶ 14].**

14. Mr. Pitts submitted his Site Selection Form to San Juan on June 3, 2019. **[Doc. 1-9; Doc. 95-1].**

15. After a student submits his or her Site Selection Form, the PTA program begins contacting the listed providers and PTA staff documents its communications with the providers on a "Rotation Log." **[Doc. 80-2 at ¶ 9].**

16. The Rotation Log for Mr. Pitts' selected providers demonstrates that PTA staff began efforts to establish agreements for Mr. Pitts' externships beginning on June 28, 2019 and continued those efforts through August 2020. **[Doc. 80-2 at ¶ 9, Ex. A].** PTA staff made efforts to place Mr. Pitts with his selected providers (St. Elizabeth's Hospital, UMASS Memorial Hospital, New England Baptist Hospital, and Massachusetts General Hospital/MGH Sports ("MGH")) but

were unsuccessful in placing him with those providers. However, PTA staff were successful in placing him at two providers he selected on his Site Selection Form – Worcester Physical Therapy Services (Mr. Pitt's third choice for his second rotation) and Boston Sports Medicine (Mr. Pitts' second choice for his third rotation). **[Doc. 80-2 at ¶ 9, Ex. A].**

17. San Juan was unable to place Mr. Pitts with MGH because it required San Juan to indemnify it or add it as an additional insured. **[Doc. 80-2 at ¶ 12 ; Doc. 1-7 at 3].** For that reason, San Juan did not obtain a contract with MGH for Mr. Pitts' clinical externship. **[Doc. 80-2 at ¶ 12].**

18. Mr. Pitts did not request Alliance Physical Therapy ("Alliance") on his Site Selection Form. **[Doc. 1-9; Doc. 80-2 at 15].**

19. Mr. Pitts sought an externship with a former employer of his, ATI Physical Therapy ("ATI"). **[Doc. 1-9 at 4].** Mr. Pitts included ATI as his third choice for his third clinical rotation. [Id.] However, the PTA program was able to contract with Mr. Pitts' second choice for his third clinical rotation, Boston Sports Medicine. **[Doc. 1-9 at 4; Doc. 80-2 at ¶ 16].** As a result, no contact was entered into with ATI. **[Doc. 1-9 at 4; Doc. 80-2 at ¶ 16]**.

20. Pursuant to PTA program Policy, no student in Mr. Pitts' seventeen (17) person cohort was permitted to complete a clinical rotation externship at a site or facility where they had previously been employed in the prior two (2) years, although some students did complete clinical rotations with their former employer(s) at different sites than where they had previously worked, in accordance with the PTA program's policies. **[Doc. 80-2 at ¶ 17].** The Policy prohibiting students from completing clinical externships with a former employer was relaxed during the height of the COVID-19 pandemic to allow students to perform rotations at the same site or facility they previously worked at, as fewer sites were willing to host students. However, no San Juan PTA

student in Mr. Pitts' cohort took advantage of this change in policy. **[Doc. 80-2 at ¶ 21].**

21. Mr. Pitts was enrolled in PTAP-210 in Summer 2020. In light of the COVID-19 pandemic, the lab portion of PTAP-210 was shifted to an online model to accommodate travel and social distancing restrictions which were in place at that time. **[Doc. 95-2 at ¶ 11].** Mr. Pitts' performance in PTAP-210 began to decline and he was placed on a professional Development Plan ("PDP") and in April 2020, his instructor met with him to review his examinations and any questions he had. **[Doc. 95-2 at ¶¶ 12-14].**

22. Plaintiff received a grade of "incomplete" in PTAP 210. **[Doc 1-7, at 1-2]; [Exhibit 2 at ¶¶ 19-20].**

23. Mr. Pitts failed to complete the mandatory skills checks required to complete PTAP-210 and PTAP-250. Mr. Pitts demanded the skills checks be graded by a "neutral pair of eyes." **[Doc. 80-2 at ¶¶ 22, 23].**

24. San Juan offered Mr. Pitts three (3) options to complete his prerequisite courses. **[Doc. 80-2 at ¶¶ 23-28].** San Juan offered, first, to allow Mr. Pitts' clinical instructor – who was not a member of San Juan's faculty – join in the skills checks via Zoom as a neutral observer. The Zoom session would be recorded and he could compare the completed grading rubric to the recorded video. Second, San Juan offered to allow a different San Juan instructor, other than his professor, conduct his skills check. Third, San Juan offered to permit a local clinical instructor to conduct the skills checks virtually without Mr. Pitts' instructor present during a recorded Zoom session. He was still offered the option to have his clinical instructor attend and observe the recorded session. Then, Dr. Cooper would grade him off of the recorded video. Mr. Pitts declined each of the three alternatives offered. **[Doc. 80-2 at ¶¶ 23-28].**

25. Because he declined each of the three alternatives offered to him to complete the

mandatory skills checks required to complete PTAP 250, he received a grade of "incomplete." **[Doc 1-7 at 1-2; Doc. 80-2, at ¶ 28].**

26. Despite San Juan's right to dismiss Mr. Pitts from the Program for failure to complete these requirements, on August 21, 2020, Interim PTA Program Director, Dr. Cooper, emailed Plaintiff and extended him the opportunity to complete his lab requirements either virtually or locally during the fall 2020 semester. **[Doc. 1-7 at 2; Doc. 80-2 at ¶ 28].**

27. Dr. Cooper also confirmed with Plaintiff that he was scheduled to complete two clinical rotations, with programs he had selected, Boston Sports Medicine from 8/24/2020 – 10/2/2020 and another with Worcester Physical Therapy from 10/5/20 – 11/6/20. **[Doc. 1-7 at 2].**

28. However, since Plaintiff failed to complete the mandatory pre-requisites, the scheduled clinical rotations, scheduled to begin the next business day, were cancelled. **[Doc. 1-7 at 2; Doc. 80-2 at ¶¶ 27-28].**

29. Mr. Pitts made a complaint to San Juan on June 9, 2020, about students in the PTA Program and the PTA Program itself. **[Doc. 95-3 at ¶¶ 4-13].** San Juan investigated his allegations including his claim that other non-minority PTA students were permitted to complete clinical rotations with their current employer while he was not. **[Doc. 95-3 at ¶¶ 4-13].** San Juan determined there was insufficient evidence to show the PTA Program treated Mr. Pitts differently than his peers based on his race in their efforts to secure a location for him to perform an externship for his clinical rotations. **[Doc. 95-3 at ¶ 12].** Mr. Pitts appealed the outcome of San Juan's investigation and an Appeals Panel upheld San Juan's investigative findings. **[Doc. 95-3 at ¶ 13].** Mr. Pitts appealed that finding and San Juan's President issued a letter confirming the finding of the Appeals Panel. **[Doc. 95-3 at ¶ 13].**

7

**LEGAL STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is appropriate if the moving party shows that "no genuine dispute" exists about any "material fact." Fed. R. Civ. P. 56; *see also Russillo v. Scarborough*, 935 F.2d 1167, 1170 (10th Cir. 1991). After the movant demonstrates "the absence of a genuine issue of material fact," the burden shifts to "the non-movant to establish a genuine issue of fact." *Georgelas v. Desert Hill Ventures, Inc.*, 45 F.4th 1193, 1197 (10th Cir. 2022). "A disputed fact is 'material' if it might affect the outcome of the suit under the governing law, and the dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Est. of Beauford v. Mesa Cnty., Colo.*, 35 F.4th 1248, 1261 (10th Cir. 2022) (citation omitted).

To defeat summary judgment, the nonmoving party cannot rest on mere allegations, but rather "must bring forward specific facts showing a genuine issue for trial." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (citation omitted). If the nonmovant does not dispute the movant's statement of undisputed facts, then those facts are deemed admitted for purposes of the summary judgment motion. *Walker v. City of Orem*, 451 F.3d 1139, 1155 (10th Cir. 2006). Likewise, "a complete failure of proof concerning an essential element of the nonmoving party's case" will entitle the movant to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Lastly, when reviewing a motion for summary judgment, the Court "construe[s] the facts in the light most favorable to the nonmovant and . . . draw[s] all reasonable inferences in its favor." *Palacios v. Fortuna*, 61 F.4th 1248, 1256 (10th Cir. 2023) (citation omitted). The Court's function is not to "weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986); *see also Sierra Club v. El Paso Gold Mines, Inc.*, 421 F.3d 1133, 1150 (10th Cir. 2005).

## ANALYSIS

Plaintiff's Complaint asserts claims against San Juan under 42 U.S.C. § 2000a-1 and 2000a-2, prohibiting discrimination in public places of accommodation, and under 42 U.S.C. § 200d, prohibiting discrimination in programs receiving federal financial assistance.  **[[Doc. 1-1 at 1; Doc. 1-2 at 1; Doc. 95 at 1]**.

With regard to the claims under Sections 2000a-1 and 2000a-2, San Juan seeks dismissal on the grounds that educational institutions are not places of "public accommodation" for purposes of those laws.  **[Doc. 55]**.  Although Plaintiff opposes dismissal of the public accommodation claims, the law is clear that Section 2000a does not apply to schools.  *Deberry v. Davis,* 2010 WJ274117 (M.D.N.C. April 19, 2010; *Dixon v. Royal Live Oaks Academy of the Arts & Sciences Charter School,* 2024 WL 4284667 (D.S.C. September 25, 2024).  Therefore, the Court grants summary judgment as a matter of law and dismisses Plaintiff's claims under 42 U.S.C. §§ 2000a-1 and 2000a-2.

The remainder of this Memorandum Opinion and Order addresses Plaintiff's claims against San Juan under 42 U.S.C. § 2000d.

## STANDARDS GOVERNING TITLE VI

Plaintiff asserts claims against San Juan for discrimination and retaliation for alleged violations of Civil Rights Violations Applicable to Programs or Activities Receiving Federal Financial Assistance, 42 U.S.C. § 2000d ("Title VI").  [**Doc. 1-1 at 1; Doc. 1-2 at 1; Doc. 95 at 1]**. Discrimination claims under Title VI must allege "intentional" conduct. *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001). To establish a prima facie case of discrimination under Title VI, a plaintiff must show that: (1) he belongs to a protected class; (2) he suffered an adverse action; and (3) that the challenged action took place under circumstances giving rise to an inference of

discrimination. *Bird v. Regents of New Mexico State Univ.*, 619 F. App'x 733, 741 (10th Cir. 2015).

Title VI retaliation claims are similarly subject to a burden-shifting analysis, which requires that plaintiff make a prima facie showing.  To establish a prima facie case of retaliation under Title VI, a plaintiff must show "(1) that he engaged in protected activity under Title VI; (2) that he suffered adverse action contemporaneous with or subsequent to such activity; (3) a causal nexus between the protected activity and the adverse action; and (4) the school knew of the retaliation and did not adequately respond." *Shahmaleki v. Kansas State Univ.*, 147 F. Supp. 3d 1239, 1246 (D. Kan. 2015).

If such a showing is made, the burden shifts to the defendant to provide legitimate and facially nondiscriminatory or nonretaliatory reasons for its action. If a defendant makes the requisite showing, the plaintiff must then establish by a preponderance of the evidence that the defendant's reasons were merely pretext for discrimination or retaliation. Id. at 742. Even under the burden shifting analysis, the "ultimate burden" of showing that a defendant intentionally discriminated or retaliated against a plaintiff "remains at all times with the plaintiff." *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981).

The events in this case take place against the backdrop of the COVID-19 pandemic.  The global COVID-19 pandemic created a world-wide public health emergency between December 2019 and May 2023.  The pandemic caused severe social and economic disruption around the world. Educational institutions and public areas were partially or fully closed in many jurisdictions, and many events were cancelled or postponed during 2020 and 2021. Telework became much more common as the pandemic evolved. Misinformation circulated through social media and occasionally through mass media, and political tensions intensified.  The pandemic created

challenges requiring individuals and organizations, including educational institutions, to craft a balance between public health and individual rights.

The facts reflect the struggles of both a student and an educational institution to try to deal with the pandemic and find a balance between the demands of public health/safety and individual student needs.  The undisputed material facts, however, do not establish racial discrimination or retaliation by the educational institution, San Juan, in violation of Title VI.  Therefore, the Court will grant summary judgment on Plaintiff's claims as a matter of law.

## A.  Title VI Discrimination:

First, Plaintiff fails to make a prima facie showing of discrimination and San Juan is entitled to judgement as a matter of law. *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. at 253. The adverse action alleged by Plaintiff is that he was not permitted to complete clinical rotations with a previous employer while two "non-minority" students were permitted to do so. Plaintiff's claim fails for two reasons: (1) Plaintiff was not eligible to participate in clinical rotations because he failed to complete the mandatory pre-requisites; and (2) on his Site Selection Form, Plaintiff ranked his sole request to be placed with a past employer lower than another choice. San Juan considered and attempted to place him in externships with the providers who he listed on his Form in order of ranked preference.

**A. Plaintiff's clinical rotations were cancelled because he failed to complete the mandatory pre-requisite courses.**

Plaintiff's Title VI allegations are speculative in nature. Where there is a legitimate nondiscriminatory explanation for the conduct, Plaintiff's claims must fail. Courts have held that a student could not establish a prima facie case of race discrimination under Title VI and Section 1981 where she was terminated from a doctorate program at a state university for failing to pass

11

certain qualifying tests. See *Middlebrooks v. Univ. of Maryland at Coll. Park*, 980 F. Supp. 824, 830 (D. Md. 1997), *aff'd sub nom. Middlebrooks v. Univ. of Maryland*, 166 F.3d 1209 (4th Cir. 1999) (holding the plaintiff's case must fail where there is a legitimate nondiscriminatory explanation).

As a matter of law, Plaintiff cannot establish a Title VI violation of discrimination. Plaintiff failed to complete the mandatory pre-requisite laboratory courses and was therefore ineligible to participate in clinical rotations. **[CUMF ¶¶ 21-28]**. Like the Plaintiff in Middlebrooks, there is a legitimate, non-discriminatory reason why Plaintiff was not permitted to participate in his clinical rotations. San Juan requires PTA students to complete clinical rotations. **[CUMF ¶ 3]**.

San Juan has a policy, applicable to all students, that clinical rotations could not be completed with a previous employer at the same site where the student worked. **[CUMF ¶ 13]**. Students could, however, complete clinical rotations with former employers, as long as their selected externship was at a different site/facility than where they previously worked in recent years. **[CUMF ¶ 13]**. This Policy applied to all PTA students. The clinical Site Selection Form completed by Plaintiff identifies his preferred choices for third-party externship providers. Nos. **[CUMF ¶¶ 14-20]**. Plaintiff's selections on the form run counter to his allegation that he was denied the ability to participate in an externship with a previous employer. **[CUMF ¶ 19]**. Plaintiff appears to complain that he was denied the opportunity to complete his externships with Massachusetts General Hospital ("MGH"); Alliance Physical Therapy ("Alliance"); and ATI Physical Therapy ("ATI") because of an employment affiliation with each.

As Dr. Cooper confirmed in her Declaration, MGH required San Juan to agree to indemnify MGH or to add MGH as an additional insured. **[CUMF ¶ 17]**. Because San Juan could not comply with MGH's requirement, it could not obtain a contract with MGH for Mr. Pitts'

clinical externship. **[CUMF ¶ 17]**. Next, Plaintiff claims he was denied a clinical externship with a former employer, Alliance. **[CUMF ¶ 18]**. However, Plaintiff never included Alliance on his Site Selection Form. **[Doc. 1-9; CUMF ¶ 18]**. As such, it was not considered for his rotation placement. Finally, Plaintiff listed ATI on his Form. **[CUMF ¶ 19]**. Plaintiff was never denied placement with ATI. **[CUMF ¶ 19]**. Instead, Plaintiff included ATI as his third choice for his third clinical rotation. **[CUMF ¶ 19]**. Because the PTA Program was able to contract with his second choice (Boston Sports Medicine), no contract was entered into with ATI. **[CUMF ¶ 19]**. Each of Plaintiff's rotation preferences were given due consideration, in order of his indicated preference. The same was done with each of Plaintiff's classmates.

The undisputed material facts demonstrate that no student in the PTA program was given preferential treatment with respect to their clinical placements. **[CUMF ¶ 20]**. As detailed above, San Juan made efforts to contract with Plaintiff's preferences for clinical rotations, in the order of his preference. Placements at his choices were secured. **[CUMF ¶ 27]**. However, Plaintiff failed to complete his mandatory prerequisites and therefore, his placements were cancelled. **[CUMF ¶ 28]**.

Through his Response, Plaintiff concedes that he elected not to complete the mandatory pre-requisite courses, rendering him ineligible to participate in clinical rotations. **[CUMF ¶¶ 21-26]**. As a result of his failure, Plaintiff's clinical rotations were cancelled. **[CUMF ¶¶ 27-28]**. Plaintiff does not dispute that it was his decision not to complete the pre-requisite courses, despite being offered numerous accommodations to be graded by a neutral grader employed by San Juan. **[CUMF ¶¶ 22-24]**. Plaintiff's failure to complete the mandatory pre-requisite courses constitute a legitimate, non-discriminatory explanation for the cancellation of his clinical rotations. *See Middlebrooks v. Univ. of Maryland at Coll. Park,* 980 F. Supp. 824, 830 (D. Md. 1997), *aff'd*

*sub nom*. *Middlebrooks v. Univ. of Maryland*, 166 F.3d 1209 (4th Cir. 1999) (holding the plaintiff's case must fail where there is a legitimate nondiscriminatory explanation). Because Plaintiff has failed to provide any disputes of material fact, summary judgment is proper.

Plaintiff further concedes that he ranked his sole request to be placed with a past employer lower than another choice on the Site Selection Form. **[CUMF ¶ 16]**. Plaintiff does not dispute that San Juan considered and attempted to place him in externships with the providers who he listed on his Form in order of ranked preference. Plaintiff's selections on the form run counter to his allegation that he was denied the ability to participate in an externship with a previous employer. **[CUMF ¶ 19]**. Plaintiff does not dispute with admissible evidence that MGH asked San Juan to indemnify it which is why no contract was entered into. **[CUMF ¶ 17]**.

Plaintiff similarly does not deny that he did not include Alliance on his Site Selection Form, his official request for placement. **[Doc. 1-9; CUMF ¶ 18]**. Because he did not request Alliance for placement, it was not considered. Finally, Plaintiff does not deny that he was never denied placement with ATI, simply that he ranked it lower than another choice. **[CUMF ¶ 19]**. No student in the PTA program was given preferential treatment with respect to their clinical placements. **[CUMF ¶ 20]**.

Plaintiff's allegations do not establish the existence of an adverse action by San Juan.  In addition to Plaintiff's failure to make a prima facie showing of an "adverse action," the undisputed material facts show that San Juan had legitimate and nondiscriminatory reasons for its efforts of placing Plaintiff with the third-party providers he selected on his Site Selection Form, and Plaintiff cannot demonstrate that San Juan's reasons were merely pretext for discriminatory conduct.

Plaintiff has presented no evidence to the contrary. His claims of discrimination under Title VI fail as a matter of law. *Middlebrooks v. Univ. of Maryland at Coll. Park*, 980 F. Supp. At 830.

**B.  Title VI Retaliation:**

To the extent that Plaintiff alleges retaliation under Title VI, his claim also must fail as a matter of law. Plaintiff alleges San Juan retaliated against him "by restricting [his] ability to complete the [PTA] program." **[Doc 1 at 6]**. However, Plaintiff's allegations of retaliation are speculative in nature. Because he did not complete the prerequisites to participate in the PTA program, he cannot establish retaliation through the PTA program.

After he filed a complaint against San Juan in June 2020, Plaintiff refused to complete the lab practical and skills checks required to complete PTAP-210 and PTAP-250. **[CUMF Nos. 21-28]**. Plaintiff demanded he be graded by a "neutral pair of eyes" as he believed he experienced discrimination in the PTA program and wanted to avoid retaliation. **[CUMF No. 23]**. San Juan was in the process of investigating Plaintiff's claims and offered three alternative options to Plaintiff to address his concerns. **[CUMF No. 24]**. Plaintiff declined each of the three alternatives offered alleging, speculatively, that permitting any San Juan faculty to grade him would place him in a position to be retaliated against. **[CUMF No. 24]**.

As a matter of law, Plaintiff has failed to demonstrate that he suffered adverse action contemporaneous with or subsequent to participation in a protected activity. Plaintiff does not cite to any adverse action at all. On the contrary, Plaintiff refused to participate in San Juan's PTA program, despite several reasonable solutions offered to him to address his concerns. Plaintiff has failed to allege any specific facts showing retaliation as a result of his complaint to San Juan. Where a Plaintiff has alleged only general assertions of retaliation, his claims must fail. See *Shahmaleki*, 147 F. Supp. 3d at 1246 (recognizing that a plaintiff "is required to allege some facts

to give the defendant fair notice of what the. . . claim is and the grounds upon which it rests.")  (internal quotation and citation omitted, alteration in original); see also *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) ("An inmate claiming retaliation must 'allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights.'").

Plaintiff alleges San Juan retaliated against him "by restricting [his] ability to complete the [PTA] program." **[Doc 1, at 6]**. However, Plaintiff's allegations of retaliation are speculative in nature. After he filed a student complaint against San Juan in June 2020, Plaintiff refused to complete the lab practical and skills checks required to complete PTAP-210 and PTAP-250. **[CUMF ¶¶ 21-28]**. Plaintiff demanded he be graded by a "neutral pair of eyes" as he believed he experienced discrimination in the PTA program and wanted to avoid retaliation. **[CUMF ¶ 23]**. Now, although not plead in his Complaint, Plaintiff alleges that San Juan retaliated against him by failing to keep his June 9, 2020, student complaint anonymous. **[Doc. 99 at 23]**.

Plaintiff's allegation is unsupported by evidence. *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1382 (10th Cir. 1994) ("Conclusory statements are insufficient to defeat a motion for summary judgment."). Instead, the evidence before the Court, the student complaint completed by Plaintiff, demonstrates that in response to the question: "may San Juan College use your name when addressing this issue?" Plaintiff selected "Yes." **[Doc 80-1 at p. 4]**. Moreover, Plaintiff wrote in the student complaint that he "discussed the issue with multiple individuals [including] Sherry Paxson, Dr. Therese Millis, and Kristina Lacey." **[Doc 80-1 at p. 4]**. Plaintiff now argues that San Juan "exposing" his complaint to Dr. Millis and Ms. Lacey was retaliatory. **[Doc. 99 at 23]**. The Court rejects Plaintiff's unsupported argument.

While in the process of investigating Plaintiff's claims, San Juan offered three alternative grading options to Plaintiff to address his concerns. **[CUMF  24]**. Plaintiff declined each of the

16

three alternatives offered alleging that permitting any San Juan faculty to grade him would place him in a position to be retaliated against. **[CUMF No. 24]**. Plaintiff has failed to demonstrate that he suffered adverse action contemporaneous with or subsequent to participation in a protected activity. *Shahmaleki v. Kansas State Univ.*, 147 F. Supp. 3d 1239, 1246 (D. Kan. 2015). Plaintiff has failed to allege any specific facts showing retaliation as a result of his complaint to San Juan. Instead, he refused to be graded by a neutral grader within San Juan due to speculative claims of retaliation. Plaintiff's general and unsupported assertions of retaliation claim fail and San Juan is entitled to judgment as a matter of law. *Shahmaleki v. Kansas State Univ.*, 147 F. Supp. 3d at 1246.

## REMAINING PENDING MOTIONS

Also pending before the Court are several motions **[Doc. 67, 71, 76, 106, 107, 131]**.  The remaining pending motions are denied as moot in light of the Court's dismissal of this case.

**IT IS ORDERED:**

1.  The Defendant San Juan College's Partial Motion to Dismiss **[Doc. 55]**, Defendant San Juan College's Motion to Dismiss on Plaintiff's Claims for Alleged Violation of 42 U.S.C. Section 2000(d) **[Doc. 77]**, and Defendant San Juan College's Motion for Summary Judgment on Plaintiff's Claims for Alleged Violation of 42 U.S.C. Section 2000(d) **[Doc. 94]** are **GRANTED**;

2.  All other pending motions **[Doc. 67, 71, 76, 106, 107, 131]** are **DENIED as moot**; and

3.  All claims in this case are **DISMISSED with prejudice.**

_____/s/_____
WILLIAM P. JOHNSON
SENIOR UNITED STATES DISTRICT JUDGE

17